# NORTH CAROLINA *v.* BUTLER

No. 78-354.   Argued March 27, 1979—Decided April 24, 1979

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, BLACKMUN, and REHNQUIST, JJ., joined. BLACKMUN, J., filed a concurring statement, *post*, p. 376. BRENNAN, J., filed a dissenting opinion, in which MARSHALL and STEVENS, JJ., joined, *post*, p. 377. POWELL, J., took no part in the consideration or decision of the case.

*Lester V. Chalmers, Jr.,* Special Deputy Attorney General of North Carolina, argued the cause for petitioner.   With him on the brief were *Rufus L. Edmisten,* Attorney General, and *Donald W. Stephens* and *Thomas F. Moffitt,* Assistant Attorneys General.

*R. Gene Braswell,* by appointment of the Court, 439 U. S. 1113, argued the cause and filed a brief for respondent.*

MR. JUSTICE STEWART delivered the opinion of the Court.

In evident conflict with the present view of every other court that has considered the issue, the North Carolina Supreme Court has held that *Miranda* v. *Arizona,* 384 U. S. 436, requires that no statement of a person under custodial interrogation may be admitted in evidence against him unless, at the time the statement was made, he explicitly waived the right to the presence of a lawyer. We granted certiorari to consider whether this *per se* rule reflects a proper understanding of the *Miranda* decision. 439 U. S. 1046.

The respondent was convicted in a North Carolina trial court of kidnaping, armed robbery, and felonious assault. The evidence at his trial showed that he and a man named Elmer Lee had robbed a gas station in Goldsboro, N. C., in December 1976, and had shot the station attendant as he was attempting to escape. The attendant was paralyzed, but survived to testify against the respondent.

The prosecution also produced evidence of incriminating statements made by the respondent shortly after his arrest by Federal Bureau of Investigation agents in the Bronx, N. Y., on the basis of a North Carolina fugitive warrant. Outside the presence of the jury, FBI Agent Martinez testified that at the time of the arrest he fully advised the respondent of the rights delineated in the *Miranda* case. According to the uncontroverted testimony of Martinez, the agents then took the respondent to the FBI office in nearby New Rochelle, N. Y. There, after the agents determined that the respondent had an 11th grade education and was literate, he was given the Bureau's "Advice of Rights" form

---

*Briefs of *amici curiae* urging reversal were filed by *Solicitor General McCree, Assistant Attorney General Heymann,* and *John Voorhees* for the United States; and by *Frank Carrington, Wayne W. Schmidt,* and *Fred E. Inbau* for Americans for Effective Law Enforcement, Inc., et al.

which he read.[1]  When asked if he understood his rights, he replied that he did.  The respondent refused to sign the waiver at the bottom of the form.  He was told that he need neither speak nor sign the form, but that the agents would like him to talk to them.  The respondent replied: "I will talk to you but I am not signing any form."  He then made inculpatory statements.[2]  Agent Martinez testified that the respondent said nothing when advised of his right to the assistance of a lawyer.  At no time did the respondent request counsel or attempt to terminate the agents' questioning.

At the conclusion of this testimony the respondent moved to suppress the evidence of his incriminating statements on the ground that he had not waived his right to the assistance of counsel at the time the statements were made.  The court denied the motion, finding that

> "the statement made by the defendant, William Thomas Butler, to Agent David C. Martinez, was made freely and voluntarily to said agent after having been advised of his rights as required by the Miranda ruling, including his right to an attorney being present at the time of the inquiry and that the defendant, Butler, understood his

[1] The parties disagree over whether the respondent was also orally advised of his *Miranda* rights at the New Rochelle office.  There is no dispute that he was given those warnings orally at the scene of the arrest, or that he read the "Advice of Rights" form in the New Rochelle office.  This factual controversy, therefore, is not relevant to the basic issue in this case.

The dissenting opinion points out, *post,* at 378, that at oral argument the respondent's counsel disputed the fact that the respondent is literate.  But the trial court specifically found that "it had been . . . determined by Agent Martinez that the defendant has an Eleventh Grade Education and that he could read and write . . . ."  App. A–21.  This finding, based upon uncontroverted evidence, is binding on this Court.

[2] The respondent admitted to the agents that he and Lee had been drinking heavily on the day of the robbery.  He acknowledged that they had decided to rob a gas station, but denied that he had actually participated in the robbery.  His friend, he said, had shot the attendant.

rights; [and] that he effectively waived his rights, including the right to have an attorney present during the questioning by his indication that he was willing to answer questions, having read the rights form together with the Waiver of Rights . . . ." App. A–22 to A–23.

The respondent's statements were then admitted into evidence, and the jury ultimately found the respondent guilty of each offense charged.

On appeal, the North Carolina Supreme Court reversed the convictions and ordered a new trial. It found that the statements had been admitted in violation of the requirements of the *Miranda* decision, noting that the respondent had refused to waive in writing his right to have counsel present and that there had not been a *specific* oral waiver. As it had in at least two earlier cases, the court read the *Miranda* opinion as

"provid[ing] in plain language that waiver of the right to counsel during interrogation will not be recognized unless such waiver is 'specifically made' after the *Miranda* warnings have been given." 295 N. C. 250, 255, 244 S. E. 2d 410, 413 (1978).

See *State* v. *Blackmon*, 280 N. C. 42, 49–50, 185 S. E. 2d 123, 127–128 (1971); *State* v. *Thacker*, 281 N. C. 447, 453–454, 189 S. E. 2d 145, 149–150 (1972).[3]

We conclude that the North Carolina Supreme Court erred in its reading of the *Miranda* opinion. There, this Court said:

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden

---

[3] But see *State* v. *Siler*, 292 N. C. 543, 550, 234 S. E. 2d 733, 738 (1977). In that case, the North Carolina Supreme Court adhered to the interpretation of *Miranda* it first expressed in *Blackmon*, but acknowledged that it might find waiver without an express written or oral statement if the defendant's subsequent comments revealed that his earlier silence had been meant as a waiver. Although *Siler* was cited by the State Supreme Court in the present case, that portion of the *Siler* opinion was not discussed.

rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 U. S., at 475.

The Court's opinion went on to say:

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *Ibid.*

Thus, the Court held that an express statement can constitute a waiver, and that silence alone after such warnings cannot do so. But the Court did not hold that such an express statement is indispensable to a finding of waiver.

An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. As was unequivocally said in *Miranda*, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.[4]

---

[4] We do not today even remotely question the holding in *Carnley* v. *Cochran,* 369 U. S. 506, which was specifically approved in the *Miranda* opinion, 384 U. S., at 475. In that case, decided before *Gideon* v. *Wainwright,* 372 U. S. 335, the Court held that the defendant had a

The Court's opinion in *Miranda* explained the reasons for the prophylactic rules it created:

"We have concluded that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." *Id.*, at 467.

The *per se* rule that the North Carolina Supreme Court has found in *Miranda* does not speak to these concerns. There is no doubt that this respondent was adequately and effectively apprised of his rights. The only question is whether he waived the exercise of one of those rights, the right to the presence of a lawyer. Neither the state court nor the respondent has offered any reason why there must be a negative answer to that question in the absence of an *express* waiver. This is not the first criminal case to question whether a defendant waived his constitutional rights. It is an issue with which courts must repeatedly deal. Even when a right so fundamental as that to counsel at trial is involved, the question of waiver must be determined on "the particular facts and circumstances surrounding that case, including the back-

___

constitutional right to counsel under the Fourteenth Amendment. The Florida Supreme Court had presumed that his right had been waived because there was no evidence in the record that he had requested counsel. The Court refused to allow a presumption of waiver from a silent record. It said: "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer." 369 U. S., at 516. This statement is consistent with our decision today, which is merely that a court *may* find an intelligent and understanding rejection of counsel in situations where the defendant did not *expressly* state as much.

ground, experience, and conduct of the accused." *Johnson* v. *Zerbst,* 304 U. S. 458, 464. See also *United States* v. *Washington,* 431 U. S. 181, 188; *Schneckloth* v. *Bustamonte,* 412 U. S. 218; *Frazier* v. *Cupp,* 394 U. S. 731, 739.

We see no reason to discard that standard and replace it with an inflexible *per se* rule in a case such as this. As stated at the outset of this opinion, it appears that every court that has considered this question has now reached the same conclusion. Ten of the eleven United States Courts of Appeals [5] and the courts of at least 17 States [6] have held that an explicit state-

---

[5] *United States* v. *Speaks,* 453 F. 2d 966 (CA1 1972); *United States* v. *Boston,* 508 F. 2d 1171 (CA2 1974); *United States* v. *Stuckey,* 441 F. 2d 1104 (CA3 1971); *Blackmon* v. *Blackledge,* 541 F. 2d 1070 (CA4 1976); *United States* v. *Hayes,* 385 F. 2d 375 (CA4 1967); *United States* v. *Cavallino,* 498 F. 2d 1200 (CA5 1974); *United States* v. *Montos,* 421 F. 2d 215 (CA5 1970); *United States* v. *Ganter,* 436 F. 2d 364 (CA7 1970); *United States* v. *Marchildon,* 519 F. 2d 337 (CA8 1975); *Hughes* v. *Swenson,* 452 F. 2d 866 (CA8 1971); *United States* v. *Moreno-Lopez,* 466 F. 2d 1205 (CA9 1972); *United States* v. *Hilliker,* 436 F. 2d 101 (CA9 1970); *Bond* v. *United States,* 397 F. 2d 162 (CA10 1968) (but see *Sullins* v. *United States,* 389 F. 2d 985 (CA10 1968)); *United States* v. *Cooper,* 163 U. S. App. D. C. 55, 499 F. 2d 1060 (1974). In *Blackmon* v. *Blackledge, supra,* the Court of Appeals for the Fourth Circuit specifically rejected the North Carolina Supreme Court's inflexible view that only express waivers of *Miranda* rights can be valid.

The Courts of Appeals have unanimously rejected the similar argument that refusal to sign a written waiver form precludes a finding of waiver. See *United States* v. *Speaks, supra; United States* v. *Boston, supra; United States* v. *Stuckey, supra; United States* v. *Thompson,* 417 F. 2d 196 (CA4 1969); *United States* v. *Guzman-Guzman,* 488 F. 2d 965 (CA5 1974); *United States* v. *Caulton,* 498 F. 2d 412 (CA6 1974); *United States* v. *Crisp,* 435 F. 2d 354 (CA7 1970); *United States* v. *Zamarripa,* 544 F. 2d 978 (CA8 1976); *United States* v. *Moreno-Lopez, supra; Bond* v. *United States, supra;* and *United States* v. *Cooper, supra.*

[6] *Sullivan* v. *State,* 351 So. 2d 659 (Ala. Crim. App.), cert. denied, 351 So. 2d 665 (Ala. 1977); *State* v. *Pineda,* 110 Ariz. 342, 519 P. 2d 41 (1974); *State ex rel. Berger* v. *Superior Court,* 109 Ariz. 506, 513 P. 2d 935 (1973); *People* v. *Johnson,* 70 Cal. 2d 541, 450 P. 2d 865 (1969) (reversing lower court on other grounds); *People* v. *Weaver,* 179 Colo. 331, 500 P. 2d 980 (1972);

ment of waiver is not invariably necessary to support a finding that the defendant waived the right to remain silent or the right to counsel guaranteed by the *Miranda* case. By creating an inflexible rule that no implicit waiver can ever suffice, the North Carolina Supreme Court has gone beyond the requirements of federal organic law. It follows that its judgment cannot stand, since a state court can neither add to nor subtract from the mandates of the United States Constitution. *Oregon* v. *Hass,* 420 U. S. 714.[7]

Accordingly, the judgment is vacated, and the case is remanded to the North Carolina Supreme Court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE POWELL took no part in the consideration or decision of this case.

MR. JUSTICE BLACKMUN, concurring.

I join the opinion of the Court. My joinder, however, rests on the assumption that the Court's citation to *Johnson* v.

---

*Reed* v. *People,* 171 Colo. 421, 467 P. 2d 809 (1970); *State* v. *Craig,* 237 So. 2d 737 (Fla. 1970); *Peek* v. *State,* 239 Ga. 422, 238 S. E. 2d 12 (1977); *People* v. *Brooks,* 51 Ill. 2d 156, 281 N. E. 2d 326 (1972); *State* v. *Wilson,* 215 Kan. 28, 523 P. 2d 337 (1974); *State* v. *Hazelton,* 330 A. 2d 919 (Me. 1975); *Miller* v. *State,* 251 Md. 362, 247 A. 2d 530 (1968); *Commonwealth* v. *Murray,* 359 Mass. 541, 269 N. E. 2d 641 (1971); *State* v. *Alewine,* 474 S. W. 2d 848 (Mo. 1971); *Burnside* v. *State,* 473 S. W. 2d 697 (Mo. 1971); *Shirey* v. *State,* 520 P. 2d 701 (Okla. Crim. App. 1974); *State* v. *Davidson,* 252 Ore. 617, 451 P. 2d 481 (1969); *Commonwealth* v. *Garnett,* 458 Pa. 4, 326 A. 2d 335 (1974); *Bowling* v. *State,* 458 S. W. 2d 639 (Tenn. Crim. App. 1970); *State* v. *Young,* 89 Wash. 2d 613, 574 P. 2d 1171 (1978). See also *Aaron* v. *State,* 275 A. 2d 791 (Del. 1971); *State* v. *Nelson,* 257 N. W. 2d 356 (Minn. 1977); *Land* v. *Commonwealth,* 211 Va. 223, 176 S. E. 2d 586 (1970) (reversing lower court on other grounds).

[7] By the same token this Court must accept whatever construction of a state constitution is placed upon it by the highest court of the State.

*Zerbst,* 304 U. S. 458, 464 (1938), *ante,* at 374–375, is not meant to suggest that the "intentional relinquishment of a known right" formula—the formula *Zerbst* articulated for determining the waiver *vel non* "of fundamental constitutional rights," 304 U. S., at 464—has any relevance in determining whether a defendant has waived his "right to the presence of a lawyer," *ante,* at 374, under *Miranda*'s prophylactic rule.

Mr. Justice Brennan, with whom Mr. Justice Marshall and Mr. Justice Stevens join, dissenting.

*Miranda* v. *Arizona,* 384 U. S. 436, 470 (1966), held that "[n]o effective waiver of the right to counsel during interrogation can be recognized unless *specifically* made after the warnings we here delineate have been given." (Emphasis added.) Support for this holding was found in *Carnley* v. *Cochran,* 369 U. S. 506, 516 (1962), which held that in the absence of an allegation of an *"affirmative* waiver . . . there is no disputed fact question requiring a hearing." (Emphasis added.)

There is no allegation of an affirmative waiver in this case. As the Court concedes, the respondent here refused to sign the waiver form, and "said nothing when advised of his right to the assistance of a lawyer." *Ante,* at 371. Thus, there was no "disputed fact question requiring a hearing," and the trial court erred in holding one. In the absence of an "affirmative waiver" in the form of an express written or oral statement, the Supreme Court of North Carolina correctly granted a new trial. I would, therefore, affirm its decision.

The rule announced by the Court today allows a finding of waiver based upon "infer[ence] from the actions and words of the person interrogated." *Ante,* at 373. The Court thus shrouds in half-light the question of waiver, allowing courts to construct inferences from ambiguous words and gestures. But the very premise of *Miranda* requires that ambiguity be interpreted against the interrogator. That premise is the

recognition of the "compulsion inherent in custodial" interrogation, 384 U. S., at 458, and of its purpose "to subjugate the individual to the will of his examiner," *id.*, at 457. Under such conditions, only the most explicit waivers of rights can be considered knowingly and freely given.

The instant case presents a clear example of the need for an express waiver requirement. As the Court acknowledges, there is a disagreement over whether respondent was orally advised of his rights at the time he made his statement.* The fact that Butler received a written copy of his rights is deemed by the Court to be sufficient basis to resolve the disagreement. But, unfortunately, there is also a dispute over whether Butler could read. See Tr. of Oral Arg. 22, 23. And, obviously, if Butler did not have his rights read to him, and could not read them himself, there could be no basis upon which to conclude that he knowingly waived them. Indeed, even if Butler could read there is no reason to believe that his oral statements, which followed a refusal to sign a written waiver form, were intended to signify relinquishment of his rights.

Faced with "actions and words" of uncertain meaning, some judges may find waivers where none occurred. Others may fail to find them where they did. In the former case, the

---

*The Court states that whether Butler was orally advised of his rights at the time of the interrogation, or rather was orally advised only at the scene of the arrest, is "not relevant to the basic issue in this case." *Ante,* at 371 n. 1. But the fact that Butler received oral warnings upon his arrest in the Bronx does not establish that he understood that the same rights applied to the interrogation conducted in New Rochelle. This is particularly so since he was told at the latter that he did not have to sign the "Advice of Rights" form, but that the agent "would like for him to talk." 295 N. C. 250, 253, 244 S. E. 2d 410, 412 (1978). Indeed, the Court does not argue that the earlier oral recitation was sufficient, but rather cites in addition Butler's receipt of the written "Advice of Rights" form. However, if Butler could not read, oral warnings were the only ones that mattered, and it thus becomes highly relevant whether he was told of his rights at the time he was interrogated.

defendant's rights will have been violated; in the latter, society's interest in effective law enforcement will have been frustrated. A simple prophylactic rule requiring the police to obtain an express waiver of the right to counsel before proceeding with interrogation eliminates these difficulties. And since the Court agrees that *Miranda* requires the police to obtain some kind of waiver—whether express or implied—the requirement of an express waiver would impose no burden on the police not imposed by the Court's interpretation. It would merely make that burden explicit. Had Agent Martinez simply elicited a clear answer from Willie Butler to the question, "Do you waive your right to a lawyer?" this journey through three courts would not have been necessary.