FARMER, Judge,
dissenting.
Let us be clear about what the court does today. It holds that a 10 year old boy with an I.Q. of 69 or 70, who had been placed by school authorities in a learning disability program and was described by one of his teachers as having difficulty in understanding directions, who had no prior record with the police, who was crying and upset when taken into custody, and who was then held by the police for nearly 6 hours (some in a police car but mostly in the station) without any nonaccusatorial adult present, could in the end knowingly and voluntarily confess to nearly every unsolved burglary on the police blotter. Because I am unable to square such a decision with my constitutional obligations, I respectfully dissent.
The police officers testified that they gave Miranda warnings and that he voluntarily admitted to the burglaries. No written acknowledgment of the warnings was obtained. There was no audio or video *984 recording made of the confessions. Nor were there any notes of the interrogation sessions. The boy swore that the officers threatened to choke him (wring his neck?) or hang him by his neck if he did not confess, a threat which one of the officers testified he could not remember making. School records show that he was in school on some of the dates of the alleged burglaries and that on one of the dates he was with another police officer.
Obviously the trial judge believed the officers’ testimony that the youth appeared to understand the warnings and voluntarily confessed. Apart from that testimony, however, I am unable to find a single additional circumstance which favors admissibility. Rather, each of the non-subjective features of this account makes a showing that this waiver of Miranda rights was unknowing and involuntary. These include the youth of the boy, age 10; his mental ability, a borderline I.Q. and considered by his teachers as learning disabled with a demonstrated difficulty in comprehending directions; the absence of a parent or, in this case, his grandmother, for he had no parent available; the length of the custodial interrogation, nearly 6 hours in a police station or police vehicle, and the evidence that the boy was in school or with another officer on some of the dates when the crimes were committed.
Moreover, some things which do not exist in this case may be equally important. There is the absence of any written memo-rialization of the Miranda warnings, the absence of any audio or video recording of the warnings and interrogation, the absence of any notes of the interrogation or any reporter’s transcript, all of which contrive to increase the heavy burden which the state bears in sustaining the admissibility of the confession.[1] In short, properly sifted the evidence shows that it was likely the product of a very frightened little boy who, under the circumstances, probably would have confessed to anything to get out of there.
Some youths are hardened and wise criminals already early in their teens. They can be adept at using our constitutional protection to avoid conviction and punishment. Because of their experience and hostility to our laws, they can and should be subjected to the rigors of our system of punishment. But there is no showing of that here. At most, the state points to a single undefined encounter with the police a year before, with the veiled implication that it alone shows criminal sophistication.
In Fare v. Michael C., 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), the court dealt with a juvenile’s confession in a murder case after he had been given Miranda warnings and had asked for his probation officer to be present. In upholding the validity of the confession the court said:
We noted in North Carolina v. Butler [441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)], that the question whether the accused waived his rights “is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case.” Thus the determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel, [citation omitted.]
This totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The totality approach permits — indeed, it mandates— *985 inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile’s age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights, [e.s.]
442 U.S., at 725-726, 99 S.Ct., at 2571-2572. As I read Fare, it means that judges may not isolate single factors to justify admission — or, for that matter, exclusion — of the confession. Instead they must ask themselves whether all of the circumstances satisfy the state’s heavy burden of demonstrating voluntariness.
It is settled that the issue of the volun-tariness of a confession ultimately devolves into a legal question under the Fifth Amendment. As the Supreme Court so recently said in Arizona v. Fulminante, — U.S. -, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991):
We normally give great deference to the factual findings of the state court, [citations omitted.] Nevertheless, “the ultimate issue of ‘voluntariness’ is a legal question requiring independent federal determination. ” Miller v. Fenton, 474 U.S. 104, 110 [106 S.Ct. 445, 449, 88 L.Ed.2d 405] (1985). See also Mincey v. Arizona, 437 U.S. 385, 398 [98 S.Ct. 2408, 2416, 57 L.Ed.2d 290] (1978); Davis [v. North Carolina, 384 U.S. 737, 741, 86 S.Ct. 1761, 1764, 16 L.Ed.2d 895 (1966)]; Haynes [v. Washington, 373 U.S. 503, 515, 83 S.Ct. 1336, 1344, 10 L.Ed.2d 513 (1963)]; Chambers v. Florida, 309 U.S. 227, 228-229 [60 S.Ct. 472, 473-474, 84 L.Ed. 716] (1940). [e.s.]
Ill S.Ct., at 1252. For me, the words “independent federal determination” do not mean deferring exclusively to the factual findings of the trial judge. They require reviewing judges to determine for themselves whether, as a matter of federal legal analysis, the facts found by the trial judge meet the heavy burden of voluntariness.
When the totality of the circumstances of this particular confession are examined under federal constitutional principles, I cannot avoid concluding that it was not shown as a matter of federal law to be knowing and voluntary. Here, incredibly, not a single objective factor suggests voluntariness. To sustain this confession, I should be forced to ignore all the non-subjective circumstances — the boy’s age of 10, his borderline intelligence, his difficulty understanding directions, his emotional state, the long interrogation, the evidence that he was in school when some of the burglaries were committed, — and focus solely on the trial court’s subjective evaluation of the officers’ testimony. That seems to me to be the very antithesis of the “totality-of-the-circumstances”.
Even recognizing that there is no per se rule against juvenile confessions, at the lowest end of the age spectrum there must be some ages where no confession will ever be admissible. It seems to me that, on age, I.Q. and learning disability alone, this child is at the outer edges of the universe of those who are capable as a matter of law of validly confessing to crimes. Indeed he is, even the majority might concede, barely at the age when reason begins. Hence for constitutional purposes, that precise point is an essential circumstance weighing heavily against voluntariness.
I can vote only to reverse.

. While I recognize that signed acknowledge-ments of Miranda warnings, and audio/visual recordings or written transcripts of the administration of such warnings and any resulting confession, are not (strictly speaking) required to show voluntariness, the absence of such evidence in a close case should, to my mind, properly be taken for Fifth Amendment purposes to indicate a lack of voluntariness.