**UNITED STATES of America, Plaintiff,**

v.

**Wilson MONTALVO–ORTIZ, Defendant.**

**Criminal No. 95–235 (DRD).**

United States District Court,
D. Puerto Rico.

Nov. 3, 1997.

Donald R. West, Orlando, FL, Juan R. Acevedo-Cruz, Hato Rey, PR, for defendant.

Jeanette Mercado-Rios, U.S. Atty's Office District of P.R., Criminal Div., Hato Rey, PR, for U.S.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court is defendant's Motion to Suppress Statements (Docket No. 447) and the United States opposition thereto (Docket No. 502). Defendant requests that the Court suppress as evidence in the present case all statements made to law enforcement agents on March 11, 1996. Defendant further seeks to suppress any other evidence which may be the "fruits" of the allegedly illegally obtained statements. After receiving testimony in an evidentiary hearing and reviewing the arguments of the parties, the Court concludes that defendant's motion is to be DENIED.

### I. Conflictive Versions of the Parties

Defendant makes a two-fold argument. First, defendant argues that he was questioned in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because the agents who conducted the interview allegedly did not give him the "*Miranda*" warnings and continued to question him after he requested an attorney. Second, defendant denies that he made some of the statements attributed to him. In particular, defendant denies that he ever stated during agent interrogation "I did not order her killed", when questioned about the victim Edna Rivera–Hernandez.

The government maintains that defendant was interviewed after the agents read him the *Miranda* warnings, that defendant signed a "Waiver of Rights Form" before the agents began the interview, that defendant was not coerced in any way, and that the defendant never requested an attorney during the interview. However, the government claims that the signed waiver form has been accidentally lost.

### II. The Law

The law in this area of custodial interrogation is crystal clear. Since the case of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court has consistently stated "that a person questioned by law enforcement officers after being taken into custody or otherwise deprived of his freedom of action in any significant way must first be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial." *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528, 128 L.Ed.2d 293 (1994) (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d

694 (1966))(internal quotation marks omitted). The burden is on the Government to prove a waiver of the *Miranda* protections by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168–169, 107 S.Ct. 515, 522–523, 93 L.Ed.2d 473 (1986) (holding that in a motion to suppress a statement allegedly obtained in violation of *Miranda* doctrine, "the state need prove waiver only by a preponderance of the evidence."). The rationale for the standard of preponderance is that the exclusionary rule at the suppression stage seeks to determine the presence of police coercion and not the guilt or innocence which must be proven beyond a reasonable doubt at trial. *Id.*

In order to determine if there has been a valid waiver, the Court must follow a two prong test: (1) determine whether the waiver was voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion and deception; and (2) determine whether the waiver was made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986). In making these determinations, the court must consider the "totality of circumstances and the facts surrounding the particular case, including the background, experience, and conduct of the accused.'" *United States v. Garcia*, 983 F.2d 1160, 1169 (1st Cir.1993) (citing *North Carolina v. Butler*, 441 U.S. 369, 374–75, 99 S.Ct. 1755, 1758, 60 L.Ed.2d 286 (1979)).

As to the first inquiry, an express written waiver is strong proof that defendant waived the *Miranda* protections knowingly and voluntarily. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). However, a written waiver is neither necessary nor sufficient to establish a waiver. *Id.* (holding that "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver.... The question of the validity of the waiver is not one of form....."). As to the second inquiry, the statements must be inadmissible if defendant "lacks the mental capacity to make a knowing and intelligent waiver" of his *Miranda* rights.

## III. Findings of Fact and Credibility Determinations

In the present case, the government has stipulated that defendant's interview was conducted in a custodial setting, thus requiring the *Miranda* protections. United States Response to defendant's Motion to Suppress, at 4, (Docket No. 502). The defendant has stipulated that at no time during the interview the agents used physical force, threats or promises. Transcript of Hearing on Motion To Suppress [hereinafter "Tr."] at 70–71. In addition, the defendant never argued that he lacked the mental capacity to understand his rights and the government presented evidence showing that defendant displayed the required mental capacity. Therefore, the decision to suppress or authorize the testimony containing the challenged statements narrows down to a credibility call of whether the agents in fact gave defendant the *Miranda* warning before eliciting the challenged statements and whether the agents questioned the defendant in violation of *Miranda* by questioning the defendant after the defendant allegedly requested an attorney, if in fact he did.

The Court received testimony from the agents that participated in the interview in controversy, and from the defendant. The agents involved in this particular interview were FBI Agent Daryl Huff, an agent with ten years of experience with the FBI; Agent Jose Torres, an agent with eleven years of experience with the Puerto Rico Police Department, who, for the past four years, has been assigned to a joint task force with the FBI denominated Calle Segura ("Safe Street"); and Agent Jose Carrion, a Sergeant of the Puerto Rico Police Department with twenty seven years of experience.

All three agents testified that, on March 11, 1996, they traveled together to the Guavate Penitentiary Center to interview Mr. Wilson Montalvo–Ortiz, the moving defendant herein. The agents testified that they had an excarceration order to retrieve Mr. Wilson Montalvo–Ortiz. The reason provided in the documents of excarceration was

that a line up was to be conducted with Mr. Montalvo–Ortiz. Agent Huff explained that when the agents are to interview a person under custody, the stated purpose of the excarceration order is a line up because, should the order state that the inmate is to be interviewed, the inmate's safety is at risk when he is returned to the penitentiary. Tr. at 77.

After the agents retrieved Mr. Montalvo–Ortiz, they drove him to the Cayey Police Headquarters. Tr. at 11, 42, 64, 77 and 133. Upon arriving at the Police Headquarters, the agents took Mr. Montalvo–Ortiz to an interview room. There, Agent Huff gave the standard FBI Acknowledge of Rights Form–FD–395 (the "waiver form") to Agent Torres so that Torres would read Mr. Montalvo–Ortiz his rights, as he had to depart the room temporarily because he had received a beeper signal and consequently had to make a phone call. Tr. at 78.

Agent Torres testified that he read the rights to Mr. Montalvo–Ortiz, and that Montalvo–Ortiz acknowledged them both orally by reading the form out loud and in writing by signing the waiver form. Tr. 9–10. Agent Torres Testified that both he and Sgt. Carrion signed the form. Tr. at 12. Agent Huff testified that he recalls he saw three signatures in the form when he received the form upon returning to the interview room. Tr. at 79. Sgt. Carrion, however, could not recall if he signed the form or if Montalvo–Ortiz in fact read the form out loud. Defendant Montalvo–Ortiz denies that the agents read him his rights or that he signed any form. Tr. at 136–137. Montalvo–Ortiz testified that the agents only showed him their I.D.'s and asked him some questions. He testified that he did not remember signing any documents. *Id.*

Once Agent Huff returned to the interview room he retrieved the waiver form and placed it in his note pad to proceed with the interview. The agents testified that before beginning with the interview agent Huff explained that the purpose of the interview was to inquire as to facts relating to Ralph Rosario and Edna Rivera–Hernandez. Tr. at 14, 71, 82. During the interview, Montalvo–Or-

tiz answered questions regarding his prison life and how he met Ralph Rosario and others in the penal institutions in which he was housed. The three agents testified that at a certain point in the interview when Montalvo–Ortiz was asked about Edna's car jacking, he spontaneously stated "I did not order her killed". Tr. at 14, 72, 122. The defendant denies having made that statement. Tr. at 142, 157. Defendant also stated that he requested an attorney. However, according to the testimony of the agents, defendant Montalvo–Ortiz never requested an attorney during the interview. Tr. at 70, 86.

As to the whereabouts of the waiver form, Agent Huff testified that he misplaced the form sometime after the interview. He testified that he remembers having examined the form again in the office, but that when he was about to type the 302 report form of the interview several days later, he could not find the waiver form. Tr. at 83. Agent Huff testified that he notified that the form had been misplaced to the Assistant U.S. Attorney in charge of the case, on the same day he typed the report of the interview. Agent Huff concurrently prepared a separate report regarding the loss of the waiver form.

■ After evaluating the testimony of the defendant and the three agents, including their responsiveness and their demeanor on the stand, the Court, using the preponderance of the evidence standard, finds the account of the agents to be more credible. The court finds that the defendant gave the challenged statements voluntarily ·after having been read the *Miranda* warnings and having signed a waiver form, with full knowledge that the purpose of the interview was to inquire facts as to defendant's relations with Mr. Ralph Rosario and the victim Edna Rivera–Hernandez. Based on the testimony of the three agents, the Court finds that Agent Torres read the rights to the defendant and that both Agent Torres and Sgt. Carrion witnessed the defendant's waiver of his *Miranda* rights. The Court also finds, based on the testimony of agents Torres and Huff, that the defendant and both ·Agent Torres and Sgt. Carrion signed the waiver form.[1]

---

1. The Court believes that Sgt. Carrion may not    recall, after more than a year and a half has

Although the Court criticizes Agent Huff's mishandling of the waiver form, the Court believes that he lost the form sometime before typing the 302 form report of the interview and that, subsequently, he was diligent in timely reporting the loss on that same day. The Court notes that a notice of a right and a waiver does not have to be in writing to be valid. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

■ The Court further finds that at no time during the interview defendant requested to be assisted by an attorney. The Court refuses to grant credit to defendant's version of the facts, partly because it is self-serving testimony, and because the Court does not find credible that the defendant, an individual who had experienced various encounters with the law, would continue answering questions after requesting an attorney.

For the foregoing reasons, pursuant to the preponderance of the evidence and considering the totality of the circumstances, defendant's Motion To Suppress Statements is hereby DENIED.

IT IS SO ORDERED.

elapsed, whether he signed the waiver form on          the day of the interview.