[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION DEFENDANT'S MOTION TO SUPPRESS
The court orally ruled February 28, 2002, on the motion to suppress filed by the defendant, Leo Ritrovato. The following represents the memorandum of that decision.
The defendant, Leo Ritrovato, filed a motion to suppress on July 5, 2001 and subsequently filed a second motion to suppress on February 26, 2002.[1] The defendant's statements which are the subject of the motions to suppress are:
 (1) Written statements provided while the defendant was in police custody; (State's Exhibit 2) and
 (2) Statements made at his arraignment for the charges at Geographical Area 21 on October 10, 2000, before the Honorable Richard W. Dyer (State's Exhibit 3).
By agreement of the parties, the court conducted an evidentiary hearing on February 28, 2002, which addressed the defendant's motion to suppress at the start of the trial. The court heard testimony at this hearing from Officer Mark Pilcher, Jeanine Ritrovato, Rebecca Siano, and the defendant, Leo Ritrovato. The court also received documentary evidence. The court finds the following evidence credible.
On October 6, 2000, Officer Mark Pilcher from the Norwich Police Department together with three other officers executed an arrest warrant for the defendant at his home in Norwich. At the time the warrant was executed, the defendant was at his home with his three children. The defendant was given an opportunity to telephone his wife who was at work at the time. He was also patted down to determine whether he had any weapons on his person. Once his wife arrived home, the defendant was placed in handcuffs but at his home he was not advised of his rights. The CT Page 9705 defendant was upset and at time he was crying, however he was not out of control and did not have to be subdued by the police officers at any time.
When he was leaving his home, his wife reminded him that he did not have to say anything to the police. Once he arrived at the police station, he was placed in the booking area and was advised of his constitutional rights as established in Miranda[2]. He was furnished a Waiver of Rights form (State's Exhibit 1) which he signed as well as initialing each of the separate rights. After being so advised, the defendant emphatically said that he was innocent and that he wanted to give his side of the story as he was being set up. Officer Pilcher took his statement and reduced it to writing.
Officer Pilcher then gave the defendant an opportunity to read the statement and make any changes to the statement. The defendant made four changes and initialed each change. At no point did the defendant indicate that he did not understand nor did the defendant appear to be under the influence of any drugs or alcohol.
At his arraignment before the Honorable Richard W. Dyer on October 10, 2000, a public defender was appointed to represent him for the bond argument only. During the arraignment, the court first asked "did you hear and understand your legal rights when I advised them earlier" to which the defendant replied in the affirmative. State's Exhibit 3, p. 2. Throughout the bond argument, the defendant insisted on speaking to the court, despite numerous warnings not only by his attorney but by the court as well.[3]
"[T]he use of an involuntary confession in a criminal trial is a violation of due process . . . The state has the burden of proving the voluntariness of the confession by a fair preponderance of the evidence . . ." (Citations omitted; internal quotation marks omitted.) State v.Pinder, 250 Conn. 385, 418, 736 A.2d 857 (1999). In order to show that the defendant waived his privilege against self-incrimination, the state must prove by a preponderance of the evidence that he knowingly and intelligently waived his constitutional right to remain silent. State v.Toste, 198 Conn. 573, 579-80, 504 A.2d 1036 (1986). "The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case." NorthCarolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286
(1979). "[T]he question of waiver must be determined on the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Id., 374-75.
Finding that a defendant has waived his rights under the Miranda
CT Page 9706 doctrine is only one aspect of the necessary inquiry. Even if the defendant knowingly relinquishes his right to remain silent, the statement must be voluntary, and the state has the burden of proving the voluntariness of any [statement] by a fair preponderance of the evidence. State v. Schroff, 206 Conn, 182, 195, 536 A.2d 952 (1988).
The determination of whether a confession is voluntary must be based on a consideration of the totality of the circumstances surrounding it.State v. Pinder, supra, 250 Conn. 418. "Factors that may be taken into account, upon a proper factual showing, include: the youth of the accused; his lack of education; his intelligence, the lack of any advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep . . ." State v.Madera, 210 Conn. 22, 41, 554 A.2d 263 (1989); see also, State v.Shifflett, 199 Conn. 718, 728, 508 A.2d 748 (1986).
In State v. Pinder the Supreme Court noted: "we have stated that the test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined. The ultimate test remains . . . Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it maybe used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." State v. Pinder, supra, 418-419 (citations omitted).
The defendant is twenty-six years old, an adult. When the defendant arrived at the police station, he was advised of his Miranda rights. He indicated that he understood those rights and signed the rights advisement card. (State's Exhibit 1). There was no evidence to indicate he has any deficiencies in his intelligence nor any evidence to indicate he could not read or write. On the contrary, he signed the advisement rights card, he read over his statement, and even made corrections to the statement. The advisement of his constitutional rights was complete and repeated. The police officer who testified was a credible witness and no evidence indicated that anything but the standard procedure was followed. The length of the defendant's detention prior to his making a statement to the police was of a short duration and the police did not engage in any prolonged or repeated questioning. The defendant did not ask to leave the station or speak to an attorney.
There was no credible testimony or indication that the defendant was so distraught that he could not understand. Although he was crying at his home when he was original arrested, he was relatively calm at the police CT Page 9707 station. This arrest was by no means a complete surprise to the defendant. He had knowledge of the investigation and had even attempted to contact the police prior to the arrest to give his side of the story, and he gave his "side of the story" with little to no probing by the police officer.
The defendant was neither intoxicated nor under the influence of any drugs at the time he made the statement and nothing indicated that his emotional state impaired his ability to understand his rights. There was no evidence of threats, physical abuse, or deprivation of food or drink by the police. This indicates to the court that the defendant did not give the oral statement because his will to remain silent was overborne, but rather he made the statement of his own free will.
The defendant unconditionally waived his Miranda rights. His free choice was not impaired. The Court finds after consideration of the totality of the circumstances that the State has sustained its burden of proof by fair preponderance of the evidence that the defendant's oral statement was voluntary.
As to the statements made by the defendant during his arraignment, he was advised by the court of his legal rights and indicated to the court he understood them. After that, the court warned him no less than three times not to speak and his attorney also warned him three times. Nevertheless, the defendant did not heed either of these warnings and made statements to the court. Finally the court ordered him not to say anything more.[4]
The defendant's statements made at the time of arraignment were made after advisement of rights on numerous occasions both by the court and his attorney. The evidence clearly indicates that these statements were made voluntarily by the defendant after a full advisement of his constitutional rights. The state has sustained its burden by a fair preponderance of the evidence that the defendant knowingly and voluntarily made these statements after a full advisement of his rights.
The motion to suppress is denied.
Swienton, J.