In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1344

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JIMMY BROWN,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CR 861—**Rebecca R. Pallmeyer**, *Judge*.

ARGUED DECEMBER 1, 2011—DECIDED DECEMBER 30, 2011

Before EASTERBROOK, *Chief Judge,* CUDAHY, *Circuit Judge,* and PRATT, *District Judge*.[*]

CUDAHY, *Circuit Judge*. This case concerns the ways in which a defendant may acknowledge that he has understood and has waived his *Miranda* rights. Officer Turner Goodwin arrested Jimmy Brown for illegally

[*] The Honorable Tanya Walton Pratt, District Judge for the Southern District of Indiana, is sitting by designation.

possessing a firearm. While Brown was in the back of a squad car, Goodwin informed Brown of his *Miranda* rights. Goodwin asked if Brown understood those rights. Brown slightly nodded his head and responded "pshh." Brown proceeded to answer several of Goodwin's questions and requested a deal. Brown argues that a mere head bob or dismissive noise is insufficient to show understanding of *Miranda* rights. Brown was later informed of his *Miranda* rights and interrogated at the station house. Brown moved to suppress his post-arrest statements. The district court denied his motion after an evidentiary hearing. Brown was convicted after a jury trial. On appeal, Brown raises two issues: (1) whether the court erred in denying his motion to suppress and (2) whether there was sufficient evidence to convict. While Brown's immediate responses to his *Miranda* warnings may have been ambiguous, defendant's attempts to negotiate a deal and his selective answering of questions are evidence that he understood his rights and voluntarily waived them. For the reasons that follow, we affirm on both issues.

In March 2008, Officers Goodwin and Marcus McGrone stopped their squad car to investigate a gathering of men in front of a house. The officers saw one of the men, Brown, flee from the scene with a handgun in his waistband. After a chase, the officers arrested Brown in front of the residence of Gwendolyn Thompson.

The officers handcuffed Brown and placed him in the back of a squad car. Goodwin read Brown his rights under *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). When

asked if he understood those rights, Brown bobbed his head and made a sighing sound. Goodwin interpreted this to mean "I know my rights" and began to interrogate Brown. Brown indicated that he had a gun due to a "murder hit" put on his head, that he did not want to go back to jail and that he would like to strike a deal to help himself. Goodwin asked who in particular from the "80s babies" ordered the "hit." Brown declined to answer. Goodwin and McGrone then took Brown to the police station.

At the station, Officer McGrone again informed Brown of his rights under *Miranda*. Brown responded "Yeah" when asked if he understood his rights. Brown also answered "Yeah" when asked if he wanted to continue speaking. Brown again admitted that he had had the handgun because the "80s babies" had a "hit" out on him.

The interview ended shortly thereafter as Brown required treatment for injuries he sustained during his flight from the police. At the hospital, Brown told Dr. Thomas Bajo that he hurt his arm by falling from a fence as he was trying to get away from the police.

I.

Brown argues that he did not clearly indicate that he understood his *Miranda* rights and thus did not voluntarily waive those rights. In considering a district court's denial of a motion to suppress, this Court reviews legal questions *de novo*, *United States v. Jackson*, 598 F.3d 340, 344 (7th Cir.), *cert. denied*, 131 S.Ct. 435 (2010), and findings

of fact for clear error, giving deference to the district court's determinations of credibility. *Id.* "A factual finding is clearly erroneous only if, after considering all the evidence, we cannot avoid or ignore a definite and firm conviction that a mistake has been made." *Id.* (internal quotation and citation omitted).

The government must show that a *Miranda* waiver was "voluntary in the sense that it was the product of a free and deliberate choice." *Berghuis v. Thompkins*, 130 S.Ct. 2250, 2260 (2010) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). A *Miranda* "waiver can be either express or implied." *United States v. Upton*, 512 F.3d 394, 399 (7th Cir. 2008) (citing *Butler*, 441 U.S., at 375-76). A person may take actions that constitute a waiver of his rights "without expressly saying so." *Id.* (quoting *Butler*, 441 U.S. at 373). Courts evaluate the voluntary nature of a defendant's actions in the context of his age, experience, education, background, intelligence, the length of questioning and other circumstances. *See, e.g.*, *Johnson v. Pollard*, 559 F.3d 746, 753 (7th Cir. 2009) (citing *Gilbert v. Merchant*, 488 F.3d 780, 791 (7th Cir. 2007)).

Looking at the totality of the circumstance, we feel it is clear that Brown understood and waived his rights. Officers gave *Miranda* warnings to Brown twice. After each recitation, he made it known that he understood those rights and proceeded to answer questions. It is immaterial that defendant did not sign a waiver form or even utter a clear yes in response to the first recitation of *Miranda*.

Even if this Court were to dismiss Brown's upward nod as ambiguous, Brown's immediate actions con-

stituted an implied waiver. Brown has had substantial experience with the criminal justice system due to six previous convictions. Despite his experience, Brown did not request a lawyer or that questioning cease. *See United States v. Banks*, 78 F.3d 1190, 1198 (7th Cir. 1996) (finding waiver where defendant had "prior experience with law enforcement officials") *vacated on other grounds by Mills v. United States*, 519 U.S. 990 (1996). Instead, it appears that Brown voluntarily provided information in the hope that he could make a deal with police. Thus, Brown asked Goodwin if there was anything Goodwin could do for him after Brown answered a few questions. In light of Brown's experience and eagerness to strike a deal, it is clear that Brown understood his rights and thought he might benefit from waiving them. *See United States v. Upton*, 512 F.3d 394, 399 (7th Cir. 2008).

Brown also did not answer all of Goodwin's questions, indicating that Brown understood he had the right to remain silent. Brown told Goodwin that he was carrying the gun to protect himself because the "80s babies" had a "hit" out on him. However, when Goodwin asked Brown to name a specific individual within that faction who ordered the "hit," Brown refused to answer. There can be an implied waiver where a defendant "selectively chose not to answer some of the questions that were put to him." *Banks*, 78 F.3d at 1198.

## II.

Brown also argues that there was insufficient evidence to convict him for illegal possession of a firearm. In con-

sidering a conviction for sufficiency of evidence, this Court considers the evidence in the light most favorable to the government. *United States v. Carillo*, 435 F.3d 767, 775 (7th Cir. 2006). Reversal is appropriate "only when the record contains no evidence . . . upon which a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Starks*, 309 F.3d 1017, 1021 (7th Cir. 2002). Meeting this standard "presents a nearly insurmountable hurdle to the defendant." *United States v. Fassnacht*, 332 F.3d 440, 447 (7th Cir. 2003) (internal quotations omitted).

To convict for felon in possession of a firearm under 18 U.S.C. § 922(g), the jury must find 1) the defendant had a prior felony conviction; 2) defendant knowingly possessed or received a firearm; and 3) the firearm traveled in or affected interstate commerce. *United States v. Hodges*, 315 F.3d 794, 799 (7th Cir. 2003). Brown contests only the sufficiency of the evidence as to the second element. However, the testimony of arresting officers Goodwin and McGrone, and Brown's own statements to police and medical personnel clearly provide sufficient evidence.

Officers Goodwin and McGrone testified that they pulled up to investigate a gathering of men on a street corner, that Brown fled the scene carrying a gun stuffed into the waistband of his pants and that, after chasing Brown, the officers caught up with him and found him in possession of a blue steel handgun. The testimony of the officers was consistent and plausible and was corroborated by Brown's own statements. *See Starks*, 309 F.3d at 1025 (noting that juries may properly consider flight as evidence of guilt).

Brown makes four arguments in support of his insufficiency claim, which are either unconvincing or present jury questions. There was ample evidence to convict Brown. When viewing the evidence in the light most favorable to the government, this Court rejects defendant's argument that no rational jury could find beyond a reasonable doubt that Brown knowingly possessed a firearm.

For the foregoing reasons, the judgment is AFFIRMED.