**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 10 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DAVID COTA-SOLIS,

      Defendant - Appellant.

No. 97-2383
(D. Ct. No. CR-97-308-LH)
(D. N. Mex.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **BALDOCK**, and **KELLY**, Circuit Judges.

---

After examining the briefs and the appellate record, this three-judge panel

has determined unanimously that oral argument would not be of material

assistance in the determination of this appeal.  See Fed. R. App. P. 34(a); 10th

Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

The defendant was convicted of possessing more than 100 kilograms of

marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 21

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

U.S.C. § 841(b)(1)(B). Defendant appeals from the district court's denial of his two motions to suppress evidence, and from the district court's refusal to apply the Federal Rules of Evidence at the suppression hearing. We take jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

On April 13, 1997, Border Patrol Agent Rogelio Villa was conducting surveillance near Cloverdale, New Mexico. Cloverdale lies at the end of New Mexico Highway 338, which starts at Interstate 10 and runs 68 miles south, terminating at the Cloverdale area. The southernmost 25 miles of Highway 338 is unpaved. There are very few homesteads along that stretch of road. Cloverdale is located approximately four miles from the Mexican border, and an increase in alien smuggling has taken place in the area.

At about 4:30 a.m., Agent Villa received a transmission from Agents Brian Garnsey and Efrain Sella-Perez, who were located north of him on Highway 338, informing him that a vehicle was traveling southbound towards Cloverdale. From his elevated vantage point off 338, Agent Villa eventually saw the lights of a car moving south on 338. Agent Villa observed the vehicle turn east off Highway 338 to a point approximately two miles from the border. The vehicle's lights shut off. About 30 to 45 minutes later, Agent Villa saw the glow of headlights again and observed a vehicle traveling back to 338 and heading northbound. Agent

Villa radioed Agents Garnsey and Silla and asked them to stop the vehicle. Agents Garnsey and Sella followed the white pickup truck while they ran a registration check. Agent Sella was somewhat familiar with the local vehicles on that portion of Highway 338, and he had not seen the truck before. He also noticed that the bed of the pickup had been covered with wood.

Agents Garnsey and Sella pulled the truck over. The defendant admitted that he was a Mexican national. Agent Garnsey placed defendant under arrest and read him his Miranda rights in Spanish. Agent Sella then asked the defendant where he had come from, to which the defendant replied that he had just crossed the border. The defendant's truck was searched, revealing 730 pounds of marijuana.

The defendant moved to suppress the marijuana evidence as well as his statement informing Agent Sella that he had just crossed the border. At the beginning of the suppression hearing, the defense attorney made objections to the government attorney's questions on the basis that they were leading and lacked foundation. The district court overruled those objections on the grounds that the rules of evidence do not apply at a suppression hearing. The district court denied the motion to suppress and the defendant entered a conditional guilty plea. Defendant now appeals, arguing (1) that the officers lacked the necessary reasonable suspicion to stop his vehicle, (2) that there is no evidence that he

waived his Miranda rights, and (3) that the district court impermissibly restricted his evidentiary objections.

II.

When reviewing a district court's grant or denial of a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous and we view the evidence in the light most favorable to the district court's findings. See United States v. Elliott, 107 F.3d 810, 813 (10th Cir. 1997). The ultimate conclusion of whether a particular stop is reasonable under the Fourth Amendment, however, is a legal determination that we review *de novo.* See United States v. Maestas, 2 F.3d 1485, 1490 (10th Cir. 1993).

Border patrol agents may stop vehicles "only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975). This standard is based on Terry v. Ohio, 392 U.S. 1 (1968) and Adams v. Williams, 407 U.S. 143 (1972), which allow brief searches and investigatory seizures upon a "reasonable suspicion" of dangerous or illegal activity. See Brignoni-Ponce, 422 U.S. at 880-82.

"In determining whether reasonable suspicion exists to justify stopping a vehicle, a court must consider the totality of the circumstances." United States v.

Barbee, 968 F.2d 1026, 1028 (10th Cir. 1992) (citations omitted).  Despite our decidedly non-mechanical approach to these cases, we have drawn from Brignoni-Ponce eight factors relevant to determining whether or not border agents had reasonable suspicion to stop a vehicle.  See United States v. Lopez-Martinez, 25 F.3d 1481, 1483-84 (10th Cir. 1994).

The first three factors are the characteristics of the area in which the vehicle is encountered, the proximity of the area to the border, and the usual traffic patterns on the particular road.  See id. at 1483.  The defendant's car was encountered on an unpaved stretch of Highway 338, in an area that contained very few homes.  The light population of the area minimized the probability that the defendant was an innocent visitor in the area.  Furthermore, the Cloverdale area is close in proximity—approximately four miles—to the border.  In light of the fact that we have counted this factor in favor of the government when a stop took place as much as sixty miles from the border, see id. at 1485, the proximity of the stop to the border in this case weighs towards a finding of reasonableness.

With regard to the usual traffic patterns on the road, the evidence also weighs in favor of the government.  Agent Sella, who was familiar with the local vehicles that traveled on that portion of Highway 338, did not recognize the white pickup truck.  The defendant was driving at 4:30 a.m., on an already secluded dirt road.  There is usually no traffic on Highway 338 at that time.   Furthermore, the

circumstances surrounding defendant's detour from the highway are suspicious. Defendant drove his truck off the highway to an area consisting mostly of brush and even closer to the Mexican border than Cloverdale, stopped, turned off his lights for approximately 30 minutes, and then returned the same way he had arrived. As the district court noted, a logical inference from the sequence of events was that the driver stopped to board aliens on the truck, or to load contraband.

The next two factors are the agents' previous experience with alien traffic and information about recent illegal border crossings. See id. at 1484. Agent Sella only had two years as a border agent at the time of arrest. Agent Villa, however, had six years on the job and patrolled Highway 338 daily. Furthermore, there had been a marked increase in the amount of alien crossings and narcotics smuggling in the Cloverdale area.

Finally, we consider the driver's behavior, aspects of the vehicle, such as sealed compartments, and whether or not the vehicle appeared to be heavily loaded. See id. We have already addressed the defendant's highly suspicious detour off Highway 338. Aside from defendant's peculiar detour, he did not behave suspiciously and there is no testimony that the vehicle appeared heavily loaded. Agent Sella noticed, however, that the bed of the pickup was covered by

a piece of wood. The covering created a compartment in which aliens—or contraband—could be stowed.

In light of the above factors, the agents stopped the defendant upon reasonable suspicion. The defendant argues that the fact that his vehicle was found near the border early in the morning was insufficient to justify a stop. The defendant, however, fails to acknowledge the testimony regarding the detour into the brush, the secluded nature of the Cloverdale area in general, and the plywood covering of the bed of the pickup. Viewing these elements in their totality, together with the proximity to the border and the time of day, we conclude the agents possessed reasonable suspicion to stop defendant.

## III.

The defendant next argues that he did not waive his right against self-incrimination, and that therefore his statement to Agent Sella should have been suppressed. A suspect may waive his right against self-incrimination as long as the waiver is made "voluntarily, knowingly and intelligently." Miranda v. Arizona, 384 U.S. 436, 444 (1966). "Whether a waiver was voluntary, knowing and intelligent, 'is a legal question requiring independent factual determination.'" United States v. Hernandez, 913 F.2d 1506, 1509 (10th Cir. 1990) (quoting Miller v. Fenton, 474 U.S. 104, 110 (1985)). We will accept the district court's findings

on this question unless they are clearly erroneous. See Hernandez, 913 F.2d at 1509.

The question of waiver "is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case." See North Carolina v. Butler, 441 U.S. 369, 373 (1979). "[I]n at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." Id. "To establish a voluntary waiver of Fifth Amendment rights, the government must show (1) that the waiver was the product of free and deliberate choice rather than intimidation, coercion, or deception; and (2) that the waiver was made in full awareness of the nature of the right being waived and the consequences of waiving." United States v. Toro-Pelaez, 107 F.3d 819, 825 (10th Cir. 1997) (citation omitted).

In this case, Agent Sella testified as to the circumstances surrounding his conversation with the defendant. According to Agent Sella's unopposed testimony, he asked the defendant, "Where are you coming from?," in a casual tone. Nothing in the record suggests that the district court clearly erred in finding a lack of intimidation, coercion, or deception. Agent Sella's testimony also satisfies the second element for proper waiver. Agent Sella testified that Agent Garnsey read the defendant his Miranda rights in Spanish. Furthermore, Agent Sella testified that the defendant acknowledged that he understood the

rights read to him, and that he did not appear incapacitated in any way. In light of this uncontested evidence, we cannot say that the district court clearly erred in finding the defendant's subsequent decision to answer Agent Sella's question a valid waiver.

IV.

The defendant's final argument is that the district court erred in refusing to consider his evidentiary objections at the suppression hearing. Whether, or to what extent, the rules of evidence apply to a suppression hearing is a question of law. We review questions of law *de novo*. See United States v. McCloud, 127 F.3d 1284, 1286 (10th Cir. 1997).

Federal Rule of Evidence 1101(d)(1) states that the rules of evidence do not apply to preliminary fact determinations to be made by the court under Rule 104. "Rule 104(a) provides that preliminary questions concerning admissibility are matters for the judge and that in performing this function he is not bound by the Rules of Evidence except those with respect to privileges." United States v. Matlock, 415 U.S. 164, 174 (1974). Therefore, we have held that the rules of evidence do not apply at suppression hearings. See United States v. Merritt, 695 F.2d 1263, 1270 (10th Cir. 1982).

Although Matlock and Merritt seem to end the matter, the defendant has an interesting counterargument. He contends that Rule 1101(d) cannot be read to

make all rules of evidence irrelevant to fact determinations under Rule 104, because Rule 104 itself would then be inapplicable to the cases in which it is supposed to operate. According to the defendant:

> What must be meant is that the traditional exclusionary rules do not apply [to suppression hearings], but that procedural regulation of the process of admission and exclusion remains applicable. Therefore the judge is not bound by the hearsay rule in his preliminary fact determinations, but rules governing objections, taking of judicial notice, and the scope of examinations continue to apply.

21 CHARLES ALAN WRIGHT & KENNETH GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5053 (1977). Although the issue is an interesting one, we find it unnecessary to decide. Assuming without deciding that it was error for the district court to ignore the defense's objections, the error was immaterial to the outcome of this appeal.

Evidentiary rule violations that do not amount to constitutional error are harmless if in light of the whole record, it can be said that they did not substantially influence the outcome of the trial. See United States v. Trujillo, 136 F.3d 1388, 1397 (10th Cir. 1998). After thoroughly reviewing the record, we find no basis to believe that the district court's refusal to entertain the defense's objections had a substantial influence on the district court's decision.

V.

For all the foregoing reasons, we AFFIRM.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge