OPINION
This is an appeal from the Lake County Court of Common Pleas. Appellant, Michael A. Nelson, appeals his conviction and sentence for aggravated robbery, kidnapping, felonious assault, and unauthorized use of a vehicle.
On February 4, 1996, the grand jury indicted appellant on five counts: count one, aggravated robbery, with specification, an aggravated felony of the first degree, in violation of R.C.2911.01 ("count one"); count two, kidnapping, with specification, an aggravated felony of the first degree, in violation of R.C.2905.01 ("count two"); count three, felonious assault, with specification, an aggravated felony of the second degree, in violation of R.C. 2903.11 ("count three"); count four, unauthorized use of a vehicle, with specification, a felony of the fourth degree, in violation of R.C. 2913.03 ("count four"); and count five, grand theft, with specification, a felony of the third degree, in violation of R.C. 2913.02 ("count five"). At the arraignment on February 16, 1996, appellant entered a plea of not guilty to all charges and bond was set.
On September 19, 1996, appellant filed a motion to suppress his oral statement made to Lieutenant Dan Llewellyn ("Llewellyn") and other officers of the Mentor Police Department. A suppression hearing was conducted on September 23, 1996, but the trial court overruled appellant's motion.[1]
A jury trial commenced on April 8, 1997. Prior to the commencement of the trial, appellee, the state of Ohio, voluntarily moved to dismiss count five of the indictment, which was granted.
Appellee called Sandra Basham ("Basham"), an employee of Pickle Bill's Lobster House ("restaurant") in Grand River at the time, to testify. She stated that after work on September 10, 1995, around 10:00 p.m., she went to a tavern across the street with some co-workers. However, one of her co-workers realized he lost his wallet, so she and Kelly Welch ("Welch") left the bar to search the parking lot. While looking for the wallet, Basham observed a man "sitting there [on a tree stump], being real quiet, not talking to anybody," which seemed strange to her. The following day when she realized that her employer, Donald Scott ("victim") had been robbed, she called the police department to report what she had seen.[2] Within a few days, she gave her written statement to the police and assisted a detective in producing a composite of the man she saw. She indicated that she did one sketch, Welch did one, and they did one together. Welch's testimony was similar to Basham's and she further provided a description of the gentleman whom was sitting on the stump.
Timothy Perkins ("Perkins"), an employee of the restaurant, was called to the stand. He explained that around 9:30 p.m. on the night in question, when he brought the victim's van to the rear door of the restaurant, he noticed that the interior lights were not working. He stated that the victim was to follow him to the bank so they could make the night deposits. However, the victim stopped for a red light. Perkins arrived at the bank and recalled waiting for the victim in the parking lot for about twenty minutes. When the victim did not get there, Perkins searched for him, but was unsuccessful. After being unable to locate the victim, Perkins went to the police station. When he arrived there, he saw the victim, who appeared very "sweaty, nervous, [and] upset."
Following Perkins' testimony, the victim recounted the events of September 10, 1995. He stated that he prepared the night deposits as usual and followed Perkins. He recalled that while he was at a red light, "a knife came at [his] neck." The man with the knife told him to "keep on driving." He tried to escape, but he did not succeed. Although he was unable to see the aggressor, he felt bristles and thought that the aggressor may have had a beard. The attacker took between $1,100 and $1,300 from his pocket. Eventually, the victim made a lunge towards the door, when the assailant pushed him and he "flew right out the door * * * and landed on his back." The attacker quickly fled the scene. The victim called the police and was taken to the police station to give his statement.
Several officers from the Mentor Police Department testified as to their roles in the robbery investigation and the procedures involved in collecting the evidence, including locating the stolen van. Midway through the trial, defense counsel moved for a mistrial, which was overruled.
Detective Thomas Walsh ("Walsh") and Llewellyn of the Mentor Police Department also testified. Walsh indicated that he assisted another officer in processing the physical evidence from the van. Walsh mentioned that in November 1995, Lorrie Stech ("Stech"), appellant's alleged girlfriend at the time, came forward with unsolicited information regarding the robbery. He stated that on November 29, 1995, after he obtained a warrant to arrest appellant, he and Llewellyn arrested appellant at his place of employment on the charges of abduction, felonious assault, and aggravated robbery. Walsh verbally advised him of his Miranda
rights and Llewellyn overheard this exchange take place. Neither officer recalled appellant responding to the recitation of rights. Thereafter, appellant was transferred to the Mentor Police Department and taken to an interview room, where Llewellyn again observed Walsh re-advise appellant of his rights. Llewellyn mentioned that appellant seemed very responsive and did not appear to be under the influence of alcohol or drugs.
Following Walsh's examination of appellant, Llewellyn interrogated him. Initially, appellant denied any involvement in a robbery, but Llewellyn informed him that the blood recovered in the van had been sent for processing and the results would be forthcoming. Appellant stated that he would give Llewellyn "the facts of the * * * robbery, but [Llewellyn had to] find out what [his] bond [was] going to be." Appellant indicated that he wanted to be released on a personal recognizance bond. Llewellyn told appellant he would find out the amount of the bail. When Llewellyn returned, he told appellant that bail was set for $10,000 cash or surety.
Llewellyn questioned appellant about the incident and asked him if Perkins was involved in the robbery. Appellant replied, "I did it myself, but you won't find my blood in the van because I didn't get cut." Appellant proceeded to explain that he had watched the restaurant for about four years and knew the victim drove a van and had a lot of money. He recalled entering the victim's van and falling asleep in the back. When the victim opened the rear door and threw the satchel of money in, appellant woke up. Appellant told Llewellyn that while he was driving, he grabbed him, reached into his pant pocket, and removed $300. After the victim jumped from the vehicle, appellant stated that he drove away with the van, grabbed a green bank bag filled with money, and abandoned the vehicle. He mentioned that the money he acquired, about $6,800, was spent on drugs and drug related things. Llewellyn asked appellant if he would prepare a written statement, but appellant replied that he would sign it, if Llewellyn typed it.
Walsh re-entered the interview room to ask appellant if he would "submit to some hair and saliva samples for comparison purposes." Appellant agreed, so Walsh took the samples. The following day, Llewellyn had a typewritten statement prepared. He and Walsh went to the jail to have appellant sign it. Prior to reading the statement to appellant, they informed him of his rights. Appellant said, "that's my statement, it's correct, but I'm not signing it."
At the conclusion of appellee's case-in-chief, appellant moved for a judgment of acquittal pursuant to Crim.R. 29, which the trial court overruled.
Mike Johnson ("Johnson"), appellant's cousin, testified in behalf of appellant. He stated that he was upset with appellant because appellant dated Stech, who was Johnson's girlfriend. However, he believed that Stech informed the police about appellant's involvement in the robbery.
Following Johnson's testimony, William Phillips ("Phillips") stated that he recalled having a conversation with Johnson in the summer of 1995 about robbing a restaurant. From that discussion, Phillips presumed that Johnson wanted to frame appellant for robbing the restaurant so that Stech, "would be pulled away from [appellant]," and he relayed this information to appellant.
Peggy Turner, appellant's mother, indicated that appellant was at her house on the night of the robbery. At the conclusion of appellant's case, defense counsel renewed its motion for judgment of acquittal, which was overruled.
On April 14, 1997, the jury returned a verdict of guilty to counts one, two, three, and four. Regarding the specification to count four, the jury determined that appellant did not cause physical harm to anyone. The specifications that were part of counts one, two, and three were severed by a previous court order. The matter was then referred to the Adult Probation Department for a presentence report and investigation and a victim impact statement. Appellant filed a motion for a new trial on April 28, 1997, which was overruled.
In a judgment entry dated April 30, 1997, the trial court sentenced appellant to an actual prison term of twelve to twenty-five years on count one and a term of ten to twenty-five years on count two. The terms were to run concurrently. No sentence was imposed as to counts three and four because the court reasoned that these counts were allied offenses to counts one and two. Appellant timely filed a notice of appeal and now asserts the following assignments of error:
 "[1.] The trial court erred in refusing to grant appellant's motion to suppress statements purportedly made by [appellant] to members of the Mentor Police Department.
 "[2.] The trial court erred, to the prejudice of [appellant], by failing to enforce a subpoena in violation of [appellant's] right to compulsory process, as guaranteed by the Sixth Amendment to the United States Constitution and Article 1, Section 10
of the Ohio Constitution.
 "[3.] [Appellant's] convictions were made against the manifest weight of the evidence."
In his first assignment of error, appellant contends that the trial court erred in denying his motion to suppress the statements he made to officers of the Mentor Police Department. Specifically, he asserts that the officers ignored his request to remain silent during questioning, and thus, violated a constitutional right.
It is well-established law that police officers must inform a suspect in custody that he or she has the right to remain silent, that his or her statements may be used against him or her in a court of law, that he or she has the right to an attorney, and that if he or she cannot afford an attorney, one will be appointed prior to questioning. Miranda v. Arizona (1966), 384 U.S. 436,444. Thereafter, the suspect may waive those rights and make incriminating statements against himself or herself without the presence of counsel. Id. This court has stated, "* * * the state bears the burden of proving that statements were procured in compliance with Miranda." State v. Powell (Dec. 31, 1998), Lake App. No 97-L-253, unreported, at 7. Moreover, the United States Supreme Court held that:
"An express written or oral statement of waiver of the right to remain silent * * * is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the [Miranda] case. As was unequivocally said in [Miranda], mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." North Carolina v. Butler
(1979), 441 U.S. 369, 373.
In State v. Eley (1996), 77 Ohio St.3d 174, 178, the Supreme Court of Ohio reasoned that the state has the burden of proving by a preponderance of the evidence that a defendant "voluntarily, knowingly, and intelligently" waived his Miranda rights based on the "totality of the circumstances" surrounding the interrogation. Also, the trial court assumes the role of the trier of fact when considering a motion to suppress, and therefore, is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Kobi (1997),122 Ohio App.3d 160, 167. Further, such a finding will not be disturbed on appeal unless there is an abuse of discretion. Statev. Lumpkin (Dec. 18, 1998), Lake App. No. 97-L-228, unreported, at 11. To determine whether a defendant's confession was involuntary, "the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." Statev. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus.
In the case sub judice, pursuant to the officers' testimony, appellant was read his Miranda rights after he was informed of the arrest warrant. Appellant was transported to the police station and Walsh Mirandized him for a second time prior to the interrogation. Llewellyn mentioned that he overheard Walsh read appellant his rights both times. They both stated that appellant indicated he understood his rights. Likewise, the following day, before Llewellyn presented the typed statement to appellant, heMirandized him once again, and appellant responded that he understood his rights. Llewellyn testified that there was no indication that appellant was under the influence of any alcohol or drugs because appellant appeared alert and he was able to carry on a conversation. Based on the testimony of Walsh and Llewellyn, the trial court determined that appellant voluntarily waived his rights. As indicated in Butler, supra, neither an oral nor a written statement of waiver is required. Instead, a course of conduct indicating appellant understood and waived his Miranda
rights is sufficient. Although appellant did not sign a waiver of his Miranda rights, the trial court could, nevertheless, conclude that such rights were in fact waived. Hence, the record supports the trial court's conclusion that appellant was read his Miranda
rights and that he acknowledged them before any questioning began. Additionally, there is nothing in the record to indicate that the trial court inappropriately gave greater credence to the officers' testimony on this issue than to appellant's argument. Consequently, appellant's first assignment of error is without merit.
In his second assignment of error, appellant asserts that the trial court erred in refusing to enforce his subpoena for Stech in violation of his constitutional right to compulsory process. Originally, Stech was on appellee's witness list. A few months prior to trial, appellee decided not to call her as a witness in the case. However, appellant's trial counsel filed his own subpoena for Stech, initially listing a Lake County address. A deputy from the Lake County Sheriff's Department attempted to serve the subpoena on Stech, but was informed that she had not resided at that address in a "long time." However, appellant's attorney obtained a Cuyahoga County address for Stech and at the trial, requested that the Lake County Sheriff's Department serve the subpoena on her in Cuyahoga County. The trial court stated "[t]he only way they can serve [Stech], [since] they have no jurisdiction * * * [is that] the subpoena would have to be served by Cuyahoga County." Nonetheless, the record reveals that, during the trial, defense counsel indicated to the trial court that he attained resident service on Stech at her residence in Cuyahoga County, although he failed to mention when he obtained such service. Apparently, Stech ignored the subpoena, as she failed to appear at the trial.
Appellant's attorney explained that he wanted to introduce Stech's testimony to show that counsel had a conversation with her. He claimed she told him that she lied when she informed the police that appellant committed the robbery because she was angry with appellant. However, because appellant's attorney procured service on Stech or at least attempted to attain service on her, appellant was not denied his right to compulsory process. Additionally, in Lancaster v. Green (1963), 175 Ohio St. 203,205, the Supreme Court of Ohio stated that the right to compulsory process does not require the state to locate a witness for the defendant.
The court is not required to act sua sponte in such instances. In the case at bar, there was no abuse of discretion on the trial court's part because appellant's attorney did not request a continuance from the court. Requesting a continuance would have given appellant time to ask that the Lake County Sheriff's Department transmit the subpoena to the Cuyahoga County Sheriff's Department to serve it on Stech, or to enlist the "good offices" of the court to expedite service through the proper channels and/or ascertain the alleged location of the witness.
Assuming arguendo that appellant was denied his constitutional right to compulsory process, Stech's testimony would not have aided appellant's defense. Appellant did not demonstrate how Stech's statement would have assisted in his defense other than by proffering an argument that she would have admitted that she lied in her initial statements to the police.[3] Hence, any error that may have occurred was harmless, in light of the overwhelming evidence against appellant, and thus, did not prejudice him. Accordingly, appellant's second assignment of error lacks merit.
In his third assignment of error, appellant claims that his convictions were against the manifest weight of the evidence. A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Statev. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v.Thompkins (1997), 78 Ohio St.3d 380, 387. In State v. Schlee
(Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 11, we held:
"* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence of each element of the offense.
"`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) (t)he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."`* * *" (Emphasis sic.)
In the instant matter, appellant was convicted of aggravated robbery, in violation of R.C. 2911.01, which states:
 "(A) No person, in attempting or committing a theft offense, * * * or in fleeing immediately after such attempt or offense, shall do either of the following:
 "(1) Have a deadly weapon or dangerous ordnance * * * on or about his person or under his control.
 "(2) Inflict, or attempt to inflict serious physical harm on another."
Further, appellant was convicted for felonious assault, which appellee can prove by showing beyond a reasonable doubt that the accused knowingly caused serious physical harm to the victim. R.C. 2903.11.
In count three, appellant was charged with the crime of kidnapping, as defined in R.C. 2905.01, which provides, in relevant part:
 "(A) No person, by force, threat, or deception * * * shall remove another from the place where he is found or retrain him of his liberty, for any of the following purposes:
"* * *
 "(2) To facilitate the commission of any felony or flight thereafter; [or]
 "(3) To terrorize, or to inflict serious physical harm on the victim or another * * *."
In count four, appellant was charged with unauthorized use of a vehicle, in violation of R.C. 2913.03, which states, "(A) [n]o person shall knowingly use or operate * * * [a] motor vehicle * * * without the consent of the owner or person authorized to give consent." Appellant challenges appellee's proof regarding all four convictions and denies that he is the perpetrator of these crimes.
In support of his argument, appellant asserts that the convictions depend entirely on the testimony of appellee's witnesses, whose statements were contradicted by appellant's witnesses. Appellant also contends that his cousin framed him and that he had an alibi. He was at his mother's home at the time the alleged crime occurred. However, this argument is not well-founded. It is within the discretion of the trier of fact to determine the credibility of witnesses and the weight to be given to their testimony. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In the instant matter, although the only physical evidence to link appellant to the crime scene was the finding of a blood type that was consistent with appellant's blood classification, it is apparent that the fact finder gave credence to appellee's witnesses. Appellee's case, coupled with the fact that appellant confessed to the crime, was more that enough testimonial evidence upon which to convict appellant of the offenses for which he was charged.
Specifically, the evidence demonstrated that the victim was robbed at knife point in his van by a man that fled with money he took from the victim's pocket and night deposit bag. The victim sustained injuries due to his struggle with the attacker. The victim finally managed to escape the van, but the assailant drove away with the vehicle. Appellant also confessed to the crime a short time into his interview with Llewellyn after he wasMirandized at least three separate times. Moreover, Basham and Welch gave a description of a man, resembling appellant, who was hanging around the parking lot on the night of the incident. Additionally, during the trial, a serologist testified regarding the results of a DNA test which revealed that the victim and appellant tested positive for blood found inside the van. Thus, we conclude that the jury did not clearly lose its way or create a miscarriage of justice in finding appellant guilty of aggravated robbery, kidnapping, felonious assault, and unauthorized use of a vehicle. Therefore, appellant's third assignment of error is not well-taken.
For the foregoing reasons, appellant's assignments of error are without merit. Accordingly, the judgment of the Lake County Court of Common Pleas is affirmed.
 _______________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., NADER, J., concur.
[1] The record indicates that appellant offered no evidence at the suppression hearing.
[2] We note that the victim was a co-owner of the restaurant.
[3] Not all constitutional errors always warrant a reversal of a criminal conviction. See State v. Williams (1983), 6 Ohio St.3d 281,286. A showing of prejudice may be required. Id.