OPINION
Michael Cartwright was indicted for possessing crack cocaine in violation of R.C. 2925.11(A). Prior to trial, Cartwright filed motions to suppress both statements he made to police and drugs that were recovered from his person. The trial court overruled both motions to suppress following a hearing. Thereafter, Cartwright entered a no contest plea to the drug possession charge and was found guilty by the trial court. Cartwright was sentenced to a mandatory term of two years imprisonment.
Cartwright has timely appealed to this court, challenging the trial court's denial of his motions to suppress.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE BASED UPON VIOLATIONS OF APPELLANT'S RIGHTS PURSUANT TO FOURTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS 10 AND 14, OF THE OHIO CONSTITUTION, AS THE STATE FAILED TO PROVE THAT OFFICERS ADEQUATELY INFORMED APPELLANT OF HIS MIRANDA RIGHTS.
 SECOND ASSIGNMENT OF ERROR THE COURT ERRED IN FAILING TO SUPPRESS EVIDENCE BASED UPON VIOLATIONS OF APPELLANT'S RIGHTS PURSUANT TO THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS 10 AND 14, OF THE OHIO CONSTITUTION, AS THE STATE FAILED TO PROVE THAT APPELLANT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY EXECUTED A WAIVER OF HIS MIRANDA RIGHTS.
In reviewing the trial court's decision on a motion to suppress, a court of appeals is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Satterwhite (1997), 123 Ohio App.3d 322. After reviewing the transcript of this suppression hearing we conclude that the record contains competent, credible evidence which supports the trial court's findings of fact.
 FINDINGS OF FACT Upon consideration of the testimony of Officer Daly and Ms. Harris, this Court finds that the following facts have been established by a preponderance of the evidence.
 On August 23, 1998 Dayton Officer Kenneth M. Daly was on duty in a marked cruiser and assigned to the "Strike Force," the uniform enforcement unit of the Narcotics Bureau. At approximately 9:30 p.m. Daly observed several persons riding bicycles in the 1300 block of Edison Street, a high drug area. One was an adult, Cartwright, and the other were juveniles. It was dark; however, there was no testimony establishing the time the sun set.
 Daly observed Cartwright ride his bike without a headlight northbound across the middle of the street in front of an oncoming westbound automobile. It appeared to Daly that the car almost hit the bicycle. Daly observed the juveniles likewise riding their bikes in circles in the middle of the street.
 Since it appeared to Daly that Cartwright had almost been struck by a car, and Cartwright appeared to be the adult of the group, Daly stopped Cartwright to inform him that the bikes were being driven in an unsafe manner in violation of city codes.
 When Daly asked for an identification, Cartwright provided his name and social security number, which Daly then conveyed to Officer Phillips. While Daly was speaking to Cartwright regarding bicycle safety, Phillips entered Cartwright's name and social security number into the police KDT computer and discovered that there was an active capias for Cartwright's arrest.
 Pursuant to the capias, Cartwright was placed under arrest. During a search incident to that arrest, Daly found within the waistband of Cartwright's pants a plastic baggie containing crack cocaine.
 Using a card provided by the Prosecutor's Office, Phillips read to Cartwright his Miranda Rights. Cartwright said that he understood his rights and agreed to speak without an attorney. In response to questions posed by Daly, Cartwright said that he was employed; that he made his income by selling drugs; and that there was about half an ounce of crack cocaine in the baggie. Daly testified that Cartwright was "very polite and cooperative and answered all the questions I had."
Trial Court's October 30, 1998, Decision Overruling Defendant's Motions to Suppress, p. 1-3.
In arguing that the State failed to prove that he was properly advised of all of his Miranda rights, Cartwright points out that the card which Officer Phillips used to advise him of his rights was not read into evidence or offered as an exhibit. Moreover, Officer Phillips did not testify at the suppression hearing, only Officer Daley did. While he testified that Officer Phillips had advised Cartwright of his Miranda rights, Officer Daley did not recite for the record the specific rights that Officer Phillips explained to Cartwright. Thus, Cartwright argues that the State failed to prove that the police advised him of his right to remain silent, his right to consult an attorney before and during questioning, and his right to appointed counsel if he could not afford to hire his own attorney. Miranda v. Arizona
(1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
In Miranda, supra, the High Court stated:
 "[W]e hold that when an individual is taken into custody or otherwise
 deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, *and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.
 Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.
Id., at 478-479.
Miranda did not prescribe any specific recitation that officers must make to a prisoner to explain the rights involved. It did state that the explanation must be "effective and express,", Id., at 473, and that "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Id., at 384, citingEscobedo v. Illinois (1964), 378 U.S. 478, 490, n. 12. Nevertheless, in defending against a motion to suppress evidence of statements that an accused made, the State is only required to prove by a preponderance of the evidence that the accused was advised of his rights. Colorado v. Connelly (1986), 479 U.S. 157,107 S.Ct. 515, 93 L.Ed.2d 473.
The term "Miranda warnings" passed into common parlance soon after the decision came down. Most law enforcement agencies provide their officers cards from which to read the rights to an accused, as the Dayton Police Division has. Some ideologues rail against them as an undue burden on police or a technicality that favors criminals. However, as Justice Souter observed in his confirmation testimony before the Senate Judiciary Committee, police have not found them to be a major impediment. Indeed, the warnings have been most helpful to them as a means of opening the door to interrogation that a defendant might otherwise later claim was coercive and a violation of his Fifth Amendment rights because of the particular circumstances involved.
More to the point, for our purposes the question is whether the State met the burden imposed on it by Miranda, which is to prove that the warnings required by Miranda were given. We believe that Officer Daly's testimony satisfied that burden. He stated, and the trial court found, that Officer Phillips used a card provided by the Prosecutor's Office to read Cartwright his"Miranda rights." That evidence is sufficient to prove that the required warnings were given, effectively and expressly. Officer Daly was not required to recite the words actually used or to offer the card into evidence to satisfy the preponderance of the evidence standard.
In arguing that the State failed to prove a knowing and voluntary waiver of his Miranda rights, Cartwright emphasizes that he did not execute any waiver form and police did not explicitly ask him if he was willing to waive his rights.
In order for a waiver of Miranda rights to be valid it must be voluntary in the sense it is the product of a free, deliberate choice, rather than some form of coercion. Additionally, the waiver must be knowing in the sense that it is being made with a full awareness of the nature of the right being abandoned and the consequence of the decision to abandon it. Moran v. Burbine
(1986), 475 U.S. 412. While an express written or oral waiver is usually strong proof of the validity of that waiver, that is neither necessary nor sufficient to establish a waiver because the question is not one of form but rather one of fact. NorthCarolina v. Butler (1979), 441 U.S. 369.
Cartwright was advised of his Miranda rights and acknowledged that he understood those rights. Cartwright then immediately indicated to police that he was willing to speak to them without an attorney present, and proceeded to cooperatively answer all of the questions posed to him. There is no evidence to suggest, much less demonstrate, that Cartwright did not understand his rights, that he was threatened or coerced into waiving those rights, or that at anytime Cartwright desired to halt the questioning and consult with an attorney.
On the totality of these facts and circumstances, we cannot say that the trial court erred in concluding that Cartwright knowingly and voluntarily waived his Miranda rights.
The first and second assignments of error are overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED THROUGH FAILING TO SUPPRESS EVIDENCE GAINED FROM A SEARCH OF APPELLANT CONDUCTED IN VIOLATION OF HIS RIGHTS PURSUANT TO THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.
 FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE GAINED AGAINST APPELLANT IN VIOLATION OF HIS CONSTITUTIONAL RIGHT TO EQUAL PROTECTION UNDER THE LAW.
Cartwright argues that his right to be free from unreasonable searches and seizures and his right to equal protection of the law were violated when police asked him for identification and then ran his name and social security number through their police computer. According to Cartwright, his identity was not related to the reason why police stopped him, and therefore their asking his identity was a mere fishing expedition for evidence of other criminal activity which exceeded the permissible bounds of an otherwise valid investigatory stop and detention. Terry v. Ohio
(1968), 392 U.S. 1. Thus, Cartwright asserts that his arrest was illegal and the contraband discovered on his person incident to that arrest should be suppressed as "fruit of the poisonous tree."
Cartwright does not challenge the legality of the initial investigatory stop by police, which was for the purpose of warning him that the manner in which he was operating his bicycle upon the public streets violated Dayton's city ordinances. The initialTerry stop by police is supported by probable cause because it was based upon an observed violation of section 74.06(A) of the Dayton Revised Code General Ordinances, which require that a bicyclist "ride as near to the right side of the roadway as practicable . . ." Thus, this investigatory stop and detention of Cartwright is constitutionally reasonable under theFourth Amendment no matter what other suspicions, ulterior motives, or subjective intent the officers may have had when they stopped him.Whren v. United States (1996), 517 U.S. 806; Dayton v. Erickson
(1996), 76 Ohio St.3d 3.
Once police discovered the active outstanding arrest warrant for Cartwright they had probable cause to arrest him and could then conduct a full search of Cartwright's person incident to that lawful arrest. United States v. Robinson (1973), 414 U.S. 218. The real issue is whether it was constitutionally permissible for police to ask Cartwright for identification and then run that information through their police computer, which revealed the outstanding warrant and Cartwright's arrest.
Cartwright asserts that requiring him to provide identification merely because this investigatory stop occurred in a "hot spot for illegal drug activity" violates his equal protection rights. The evidence does not support Cartwright's claim, however, that he was asked to identify himself because of the physical location of this stop. More importantly, the evidence does not demonstrate that Cartwright was treated differently in that regard than other persons similarly situated. Officer Daly testified that he asked Cartwright for identification so "I knew who I was talking to." It is not unreasonable for police to request identification from someone whom they have lawfully stopped to investigate possible criminal activity.State v. Frederick (July 22, 1993), Montgomery App. No. 13780, unreported.
The evidence demonstrates that Officer Daley merely asked Cartwright for identification. There is nothing to suggest that Daly demanded compliance with that request as a condition of Cartwright's release. Therefore, Cartwright voluntarily provided his name and social security number at Officer Daly's request. Officer Phillips checked Cartwright's identity through the police computer while Officer Daly was discussing Cartwright's violation of the bicycle safety ordinance, which is what prompted police to stop Cartwright in the first place. Clearly, on these particular facts and circumstances, the conduct of police in checking Cartwright's identity did not unduly prolong the duration of this stop or vary it from its proper purposes in an unreasonable way. Therefore, it was not constitutionally unreasonable forFourth Amendment purposes. State v. Chagaris (1995),107 Ohio App.3d 551.
The third and fourth assignments of error are overruled.
 Conclusion
Having overruled the assignments of error presented, we will affirm the judgment from which this appeal was taken.
WOLFF, J. and FAIN, J., concur.