[Cite as *State v. Baker*, 2013-Ohio-1737.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO. 9-12-51

    v.

TRAVIS JAY BAKER,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 12-CR-102

Judgment Reversed and Cause Remanded

Date of Decision:   April 29, 2013

APPEARANCES:

    *Jeff Ratliff* **for Appellant**

    *Brent W. Yager* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Travis Jay Baker ("Baker") brings this appeal from the judgment of the Court of Common Pleas of Marion County finding him guilty of four felonies and sentencing him to a total of seven years in prison. For the reasons set forth below, the judgment is reversed and the matter is remanded.

{¶2} On March 8, 2012, Baker was arrested and charged with a robbery that occurred on March 7, 2012. Detective Jason Dutton ("Dutton") began to question Baker concerning the robbery. Baker invoked his right to counsel at the initial interview and the interview was immediately terminated. On March 15, 2012, the Marion County Grand Jury indicted Baker on four counts: 1) Aggravated Robbery in violation of R.C. 2911.01(A)(3), a felony of the first degree; 2) Felonious Assault in violation of R.C. 2903.11(A)(2), a felony of the second degree; 3) Felonious Assault in violation of R.C. 2903.11(A)(1), a felony of the second degree; and 4) Theft in violation of R.C. 2913.02(A)(1), a felony of the fourth degree. Baker was arraigned on March 19, 2012, and counsel was appointed for him. Unable to make bail, Baker was incarcerated at the Multi-County Jail pending trial.

{¶3} On March 26, 2012, Dutton went to the Multi-County Jail to interview Baker. Baker was brought to the locked conference room. Baker advised Dutton that he did not wish to speak without counsel seven to nine times. Dutton then

turned off the tape recorder, but continued to converse with Baker while they waited for a guard. Eventually, Baker made incriminating statements in response to the conversation.

{¶4} On May 14, 2012, Baker filed a motion to suppress his statements. A hearing was held on the matter on May 24, 2012. On July 18, 2012, the trial court denied Baker's motion to suppress. Baker changed his pleas to ones of no contest on July 24, 2012. The trial court held the sentencing hearing that same day. The trial court ordered that Baker serve seven years in prison on each of the first three counts and seventeen months in prison for the theft conviction. All sentences were ordered to be served concurrently for a total prison term of seven years. Baker appeals from this judgment and raises the following assignments of error.

### First Assignment of Error

**The trial court erred and abused its discretion in denying [Baker's] motion to dismiss and/or suppress as statements obtained from [Baker] were obtained in violation of [Baker's] Fifth Amendment right against self-incrimination.**

### Second Assignment of Error

**The trial court erred and abused its discretion in denying [Baker's] motion to dismiss and/or suppress as statements obtained from [Baker] were obtained in violation of [Baker's] Sixth Amendment right to counsel.**

{¶5} Both of the assignments of error allege that the motion to suppress Baker's statements at the Multi-County Jail should have been excluded.

**Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual \*155 questions and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Fanning (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. State v. McNamara (1997), 124 Ohio App.3d 706, 707 N.E.2d 539.**

*State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. Thus, this court must accept the factual findings of the trial court, but determine whether, considering the facts and applying the law de novo, the facts satisfy the legal standards for admissibility.

{¶6} The U.S. Supreme Court has addressed the issue of what must happen when a defendant invokes his or her right to counsel during a custodial interrogation.

**[A]lthough we have held that after initially being advised of his Miranda rights, the accused may himself validly waive his rights and respond to interrogation, see *North Carolina v. Butler*, [441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), at 372–376], the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.FN8 We further hold that an accused, such as Edwards, having expressed his desire to deal with the**

**police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.**

**FN8. In *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 423 (1977), where, as in *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the Sixth Amendment right to counsel had accrued, the Court held that a valid waiver of counsel rights should not be inferred from the mere response by the accused to overt or more subtle forms of interrogation or other efforts to elicit incriminating information. In *Massiah* and *Brewer*, counsel had been engaged or appointed and the admissions in question were elicited in his absence. But in *McLeod v. Ohio*, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965), we summarily reversed a decision that the police could elicit information after indictment even though counsel had not yet been appointed.**

***Miranda* itself indicated that the assertion of the right to counsel was a significant event and that once exercised by the accused, "the interrogation must cease until an attorney is present." [*State v. Miranda*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) at 474]. Our later cases have not abandoned that view. In *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the Court noted that *Miranda* had distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney and had required that interrogation cease until an attorney was present only if the individual stated that he wanted counsel. 423 U.S., at 104, n. 10, 96 S.Ct., at 326, n. 10; see also id., at 109–111, 96 S.Ct., at 329–330 (White, J., concurring). In *Fare v. Michael C.*, [442 U.S.707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979) at 719], the Court referred to *Miranda's* "rigid rule that an accused's request for an attorney is per se an invocation of his Fifth Amendment rights, requiring that all interrogation cease." And just last Term, in a case where a suspect in custody had invoked his *Miranda* right to counsel, the Court again referred to the "undisputed right" under *Miranda* to remain silent and to be free of interrogation "until he had consulted with a lawyer." *Rhode Island v. Innis*,**

> **446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980). We reconfirm these views and, to lend them substance, emphasize that it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel.**

*Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), at 484-485.

{¶7} Once a defendant has been indicted, the Sixth Amendment of the U.S. Constitution guarantees a defendant the right to have counsel present at all critical stages, including interrogation by the State. *Montejo v. Louisiana*, 556 U.S. 778, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009). A defendant may later waive this right, though, after being readvised of his or her *Miranda* rights in a subsequent interrogation. *Maryland v. Shatzer*, 559 U.S. 98, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010). If upon being advised of his or her rights, a defendant again invokes his or her right to counsel, the interrogation must cease. *Id.*

{¶8} Interrogation refers not only to express questions asked by officers, but also to any words or actions that are reasonably likely to elicit a response. *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed. 2d 297 (1980). In *State v. Knuckles*, 65 Ohio St.3d 497 (1992), the Ohio Supreme Court determined that a statement that the officer only wanted to talk to the defendant about a third party was still an interrogation because it invited a response. In *Knuckles*, the court reversed the lower court holding that by making a statement about wanting

to know about a third party, the police were continuing the interrogation after the right to counsel had been invoked. The court then set forth a bright line rule for interrogation after the right to counsel has been invoked.

> **Once an accused invokes his right to counsel, all further custodial interrogation must cease and may not be resumed in the absence of counsel unless the accused thereafter effects a valid waiver or himself renews communication with the police.**

*Id.* at paragraph one of the syllabus. See also *State v. Petruccelli*, 11th Dist. No. 054, 2011-Ohio-3292. The court in *Knuckles* then required a two part test: 1) Was the right to counsel invoked?; and 2) Did the defendant initiate further discussions or knowingly and intelligently waive his or her right to counsel? *Knuckles* at 496.

{¶9} In this case, there is no dispute that Baker was in custody awaiting trial. There is also no dispute that the Dutton came to the jail to question Baker about the offenses for which Baker was awaiting trial. The questioning took place in a locked room and Baker was not free to leave. Thus, his questioning was custodial and the *Miranda* rights applied.

{¶10} A review of the recording of the interview showed the following conversations occurred. Once in the interrogation room, Dutton advised Baker of his rights. Dutton immediately stated that he wanted his counsel present. The recording indicates that Baker stated a minimum of five times over a less than four minute span that he did not wish to speak without his attorney present. Therefore,

the first prong of the *Knuckles* test was met as there was an undisputed and clear invocation of the right to counsel.

{¶11} The recording also showed that Dutton continued to speak to Baker after the right to counsel was invoked and told Baker how speaking with Dutton might "help his situation." Dutton also informed Baker that he would be back out to the jail to speak with him every 14 days. After Dutton informed Baker that he would contact Baker's attorney, he eventually turned off the recording. During his testimony, Dutton testified that after he turned off the recording, he continued to converse with Baker. Tr. 43. Dutton also admits on cross-examination that he was the one continuing the conversation. Tr. 43-44, 47. A review of the recording and the testimony of Dutton indicate that after Baker invoked his right to counsel, Dutton continued to engage him in conversation. Specifically, Dutton testified that on the way out of the interrogation room he made the following statement to Baker.

> **When we got out in the hall, I told him, I said "look, you know, if you change your mind and you want to talk let us know, we're just trying to figure out if somebody else was involved". * * ***
>
> ***\* \* \****
>
> ***\* \* \* At that point I told him, I said you know, "I know you feel bad" \* \* \*.**

Tr. 27-28. Baker made his confession in response to the above comments by Dutton and the continued questioning by Dutton after Baker had repeatedly

invoked his right to counsel. Baker had unquestionably invoked his right to counsel multiple times, yet Dutton continued to converse with Baker concerning the case, how talking with Dutton might help Baker's situation, and how Dutton knew Baker felt bad about what had happened.

{¶12} A review of the evidence, including Dutton's admission that he was the one continuing the conversation, shows that Baker did not renew the communication. The communication between the two had never ceased. The evidence also indicates that Baker made statements that he knew or should have known would elicit a response after the request for counsel had been made. This is impermissible under the holding of *Knuckles*. Thus, the second prong of *Knuckles*, a showing that Baker renewed the communication and voluntarily waived his right to counsel, is not met. Baker did not renew the communication and did not make a valid waiver of his right to counsel.

{¶13} The State argues that under the holding in *Shatzer*, *supra*, Dutton had the right to reinterrogate Baker. The holding in *Shatzer* is not at issue in this case. Even in *Shatzer*, the U.S. Supreme Court recognized that the renewed interrogation must cease if the defendant invokes his or her right to counsel. Thus, we need not address the requirements of *Shatzer*. The trial court erred in denying the motion to suppress the statements from the second interrogation. The first and second assignments of error are sustained.

{¶14} Having found error prejudicial to the defendant, the judgment of the Court of Common Pleas of Marion County is reversed and the matter is remanded for further proceedings.

*Judgment Reversed*
*And Remanded*

**PRESTON, P.J. and ROGERS, J., concur.**

**/jlr**