Filed 4/22/16  P. v. Anderson CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E064267 |
| v. | (Super.Ct.No. FVI1101093) |
| RICHARD ANDERSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Erik M. Nakata, Judge.  Affirmed.

Richard Anderson, in pro. per.; and Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Richard Anderson is serving a Three-Strikes, 116-years-to-life sentence after a jury convicted him of charges stemming from a robbery spree. We affirm the judgment.

1

## FACTS[1] AND PROCEDURE

On September 24, 2010, defendant went into a Burger King restaurant at about 8:00 a.m. He used a knife to persuade the cashier to open the cash register, from which he took $60. Defendant also grabbed the cashier's apron. The soundless surveillance video was played for the jury. The cashier identified defendant from a photographic lineup. This is the basis for count one.

On February 26, 2011, defendant entered a CVS pharmacy at about 8:30 a.m. He pulled a knife on the cashier who was scanning his items, lunged toward her, and ordered her to open the cash register and give him the money, along with cigarettes. The soundless surveillance video was played for the jury. The cashier identified defendant from a photographic lineup. This is the basis for count two.

On May 10, 2011, defendant entered another CVS pharmacy at about 7:00 a.m. After the cashier had rung up his purchase, defendant handed her a note saying he had a gun and telling her to give him the money from the cash register. The cashier did so, and defendant left after telling the cashier to go into a back room. The soundless surveillance video was played for the jury. The cashier identified defendant from a photographic lineup. This is the basis for count seven.

On May 12, 2011, defendant entered a Green Tree Inn at about 10:00 p.m. As he and the front desk clerk were at the front desk checking him into a room, he pulled out a

---

[1] This opinion describes only the crimes of which defendant was convicted. Defendant was accused of committing eight robberies in the high desert area in September 2010 and February through May 2011.

2

knife and asked for all of the money. The front desk worker gave defendant all the money in the cash register. Defendant told him to go into the office, and then left. The cashier identified defendant at the police station, not from a lineup, but was just shown one person, wearing the same clothes defendant wore during the robbery. This is the basis for count eight.

Shortly after the robbery, sheriff's deputies attempted to pull over defendant about a mile or so away from the Green Tree Inn. Defendant failed to yield, despite two police units activating their emergency lights and sirens. Defendant entered a freeway and accelerated to 90 miles per hour, making several unsafe lane changes. Defendant eventually stopped on the shoulder. This is the basis for count nine.

On March 12, 2014, the People filed an information charging defendant with eight counts of second degree robbery (Pen. Code, § 211),[2] each while armed with a deadly weapon, a knife (§ 12022, subd. (b)(1)), and each constituting a "strike" conviction (§§ 1192.7, subd. (c) & 667.5, subd. (c)). The People charged defendant in count nine with evading a police officer (Veh. Code, § 2800.2, subd. (a)). The People alleged defendant had two prior strike convictions, two prior serious felony or "nickel" convictions (§ 667, subd. (a)(1), and four prior prison term convictions (§ 667.5, subd. (b)).

The weapon allegation as to count seven was dismissed on January 8, 2015.

---

[2] All section references are to the Penal Code unless otherwise indicated.

On January 13, 2015, the jury found defendant guilty on counts one and two; not guilty on counts four and five; and guilty on counts seven, eight and nine. The jury found true the allegation that defendant used a deadly weapon, a knife, as to counts one, two, and eight. The court declared a mistrial on counts three and six after the jury deadlocked.

On January 15, 2015, the court held a court trial on the prior conviction allegations and found true the two strike priors and two nickel priors, and one of the prison term priors.

On April 8, 2015, defendant filed a motion under section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 asking the court to dismiss the two strike priors.

On April 16, 2015, the People filed a reply to defendant's motion.

On July 24, 2015, the court denied defendant's motion and sentenced him to 116 years to life as follows: five years each for the two nickel priors, plus one year for the prison term prior, plus two years for the evading police conviction, plus one year for each of the three deadly weapon enhancements, for a total determinate term of 16 years; to be followed by four terms of 25 years to life under the Three Strikes law, one for each of the robberies, to be served consecutively.

This appeal followed.

## DISCUSSION

After defendant appealed, upon his request, this court appointed counsel to represent him on appeal. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a

4

statement of the case, a summary of the facts and a potential arguable issue, and requesting this court to conduct an independent review of the record.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. Defendant argues the following in his supplemental brief. First, that Detective Wickum did not properly *Mirandize*[3] him at the Victorville police station and then improperly persuaded defendant to talk about the crimes. This is a more general statement of the potentially arguable issue that appellate counsel raised——"Where the detective advised appellant of his *Miranda* rights, but did not ask appellant whether he wanted to talk before beginning questioning, did the trial court err in failing to suppress appellant's statements." The transcript of this interview with defendant includes the following pertinent portion:

> "[DET. WICKUM]: . . . I'm going to read you your rights. [¶] And that is, you have the right to remain silent. Anything you say can be used against you in court. You have the right to an attorney before and during questioning. If you cannot afford it, an attorney will be appointed for you by the court free of charge before the questioning. Do you understand the rights I have just explained to you?
>
> "[DEFENDANT]: Yes.
>
> "[DET. WICKUM]: Okay. Um, so what happened tonight?"

At that point defendant and the detective begin a conversation that was used against defendant in court. An express waiver is not required where a defendant's words and actions indicate that he intended to waive his rights. (*People v. Whitson* (1998) 17 Cal.4th 229, 245-246, 250, citing *North Carolina v. Butler* (1979) 441 U.S. 369, 370-372,

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 426.

374-375.) Here, defendant answered "yes" when asked if he understood his rights, and then readily answered Detective Wickum's questions. At one point later in the interview, defendant said to the detective, "I know the system. I know you guys, how you guys operate. Um. You read me my rights. I don't have to say Jack crap to you," to which the detective answers, "Right." We find that defendant effectively waived his right to be silent.

Defendant's second argument refers to counts four and five, of which the jury found him not guilty. Defendant argues detectives first showed the victims in those robberies a six-pack of photos, from which they could not identify him, and then showed them a single photo, from which they could identify him.[4] Defendant then argues, "Who's to say that he did not do the same thing" in counts one, two, seven and eight. The record indicates that the witnesses in counts one, two and seven picked defendant out of a six-pack photo lineup. As for count eight, the record shows the witness did pick defendant out of a single person lineup. However, single-person lineups are not in and of themselves unduly suggestive. (See *People* v. *Odom* (1980) 108 Cal.App.3d 100, 110.) "In determining the fairness of a single-person showup, the following factors are to be considered: (1) The opportunity of the witness to observe the suspect at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's description of the suspect, (4) the certainty shown by the witness at the confrontation, and (5) the length of time between the crime and the confrontation." (*People* v. *Cowger* (1988) 202

---

[4] This did in fact take place with the witness in count four. However, the record does not indicate this took place with the witness in count five.

Cal.App.3d 1066, 1072; *Manson* v. *Brathwaite* (1977) 432 U.S. 98, 110, 114; *People* v. *Gordon* (1990) 50 Cal.3d 1223, 1242.) Here, the witness was with defendant in the inn's lobby for about five minutes, including the time defendant pretended to be checking into the inn. The witness picked out the defendant the same day defendant robbed the inn, and the witness recognized defendant's clothing and a mole on his face without much trouble, stating, "I could clearly tell that it was him." Further, the witness testified that the sheriff's detective told him before the lineup: "[I]f that's the guy, say, Yes. If it's not, then say, No." Given these factors, the single person lineup was not unduly suggestive.

Defendant's third argument is that the trial court abused its discretion when it failed to strike one or both of his prior strike convictions, from 1988 and 1998, both for robbery. We have reviewed defendant's extensive criminal record, his specific arguments regarding each of the crimes, and the applicable law, and conclude the trial court did not abuse its discretion.

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the entire record for potential error and find no arguable error that would result in a disposition more favorable to defendant.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
                                            P. J.

We concur:

HOLLENHORST_____
                    J.

McKINSTER_____
                    J.